# WASHINGTON & GEORGETOWN RAILROAD CO.

*v.*

## THE AMERICAN CAR COMPANY.

CONTRACTS, TIME OF ESSENCE OF; MEASURE OF DAMAGES; SPECULATIVE PROFITS; COSTS; APPELLATE PRACTICE.

1. In a contract between a street railroad company which has been required by law to change its motive power from horses to cable, and a car manufacturing company, whereby the manufacturing company agrees to furnish a certain number of cars within a time prescribed, time is of the essence of the contract; and the manufacturing company is answerable in damages for a breach of the contract in failing to furnish the cars within the time agreed upon.

2. In a suit on such a contract, evidence of the estimated probable receipts and profits of the railroad company, in the way of passenger fares, which would have been realized if the cars had been delivered in due time, is not admissible, such damages being too speculative and uncertain.

3. The true measure of damages in such a case is the reasonable rental value of such cars from the time they should have been delivered to the time of the actual delivery, less the interest on the contract price during such time.

4. In this District the successful party in a civil suit is entitled to have the traveling expenses of his non-resident witnesses, at the rate of five cents a mile, taxed in his costs, where it appears that the presence of such witnesses was necessary; *construing* the act of Congress of February 28, 1799 (1 Stat. 624); Sec. 848, R. S. U. S., and Sec. 880, R. S. D. C.

5. Questions not raised on a trial and presented to the trial court for decision, will not generally be entertained on appeal; but where it is apparent upon the record that the case has been mistried, or tried upon some erroneous theory as to the rights of the parties and the amount recoverable, the judgment will be reversed and the case remanded for retrial.

No. 402. Submitted January 22, 1895. Decided March 5, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action of assumpsit. *Reversed.*

In this case after the verdict the plaintiff The American Car Company filed a motion in the trial court to have the fees and expenses of its non-resident witnesses taxed in the costs to follow the judgment. The trial justice, Mr. Justice COLE, in granting the motion delivered the following opinion:

This is a motion to tax as costs in the case, recoverable by plaintiff against the defendant, fees and expenses of witnesses from St. Louis to Washington and return, and expenses of maintenance while here and fees and expenses of another witness while detained here as such.

The motion involves the determination of questions not heretofore decided by this court, either at special or general term, so far as I have been able to learn, though kindred questions relating to recoverable costs of another character have been decided at special term.

The first point to be determined is what, if any, statute upon the subject is in force in this District.

Section 880 of the Revised Statutes of the United States relating to the District of Columbia provides that " Witnesses are entitled to the same compensation as received for their attendance in the circuit courts of the District prior to July 7, 1838."

The statute in force prior to the last-mentioned date is the act of February 28, 1799, 1 Stat. 624, in the sixth section whereof it is provided that a witness shall be entitled to receive " for each day he shall attend in court one dollar and twenty-five cents, and for travelling at the rate of five cents per mile from their respective places of abode to the place where the court is holden, and the like allowance for returning." While only the word "attendance" is used in Section 880 above referred to, the proper construction of that section seems to be that it refers to the act of February 28, 1799, as the law providing for and defining all the taxable costs of a witness.

Section 848 of the Revised Statutes of the United States,

which was Section 3 of the act of February 26, 1853, provides for the payment of witness' fees in courts of the United States in substantially the same language contained in the sixth section of the act of February 28, 1799, above referred to, and the compensation provided for by each law is the same, except that Section 848 of the Revised Statutes fixes the *per diem* at one dollar and fifty cents, while the act of 1799 provides one dollar and twenty-five cents. Both statutes allow mileage, and at the same rate.

Therefore, which one of these statutes is to be followed in the taxation of witnesses' costs is immaterial except as to the inconsiderable item of twenty-five cents per day. It may be remarked, however, that under previous rulings of some of the judges of this court it might be properly held that Section 848 of the General Statutes is in force in this District.

In two separate cases—one decided by Justice Cox and the other by Justice JAMES, in neither of which was there a written opinion—it was held that Section 903 of the Revised Statutes of the District, fixing the fees of attorneys and solicitors to be taxed in the costs in favor of the prevailing party at five dollars in law cases and ten dollars in chancery cases, was superseded by Section 824 of the General Revised Statutes, taken from the act of 1853, fixing such fees at higher rates. See Wash. Law Rep., Vol. 14, p. 490.

If these rulings are correct there would seem to be no reason why they do not apply to the statutes under consideration, especially as Sections 824 and 848 relate to the same general subject of taxable fees or costs and are embraced in the same chapter; but as this question has not been argued in this case and would make but a slight difference in the amount to be taxed, whichever way it might be determined, I have not decided it except *pro forma*, but will follow the unvarying practice and direct the *per diem* to be taxed at $1.25 under the act of 1799. Undoubtedly one or the other of those statutes is in force in this District;

and as it is immaterial which, as affecting the questions argued before me, I adopt the one last referred to as being the one recognized by the court and bar up to this time as fixing the *per diem* at $1.25.

The important questions presented by the motion and arguments are:

First. What, if any, fees or expenses of witnesses other than the *per diem* can be taxed in the costs in favor of the prevailing party so as to make it a part of the judgment and collectible by execution?

Second. If any such fees or expenses other than the *per diem* are so taxable, under what circumstances may they be allowed?

The plaintiff claims the right to have taxed the actual necessary traveling and living expenses of the necessary witnesses from the time they left their homes at St. Louis until their return there, including their reasonable hotel bills while necessarily detained in Washington in attendance upon the trial; or, if not that, then mileage from St. Louis to Washington and return, at the rate of five cents per mile each way. The defendant contests the right to either.

The right to costs being of statutory and not of common law origin, it follows that where a statute prescribes certain allowances as "compensation" to a witness for attending a trial, all allowances not therein specified are by implication excluded as effectually as if the statute stated in express terms that no other or different allowances should be made. The actual traveling and living expenses of a witness not being provided for in the statute cannot be allowed. The five cents per mile for travel each way is intended to cover these expenses, and, whether it does or not, the court has no authority to allow anything more except the *per diem* for attendance in court. There is no doubt, however, that in a proper case the prevailing party is entitled to have taxed in the costs the mileage of witnesses specified in the statute.

It is contended by the defendant's counsel in this case, however, that it cannot be allowed because the witnesses were not summoned and lived at a greater distance than one hundred miles from the place of trial, and that, therefore, their depositions might have been taken.

Upon the first question, whether it is necessary that a witness shall be summoned in order to entitle him to mileage, the authorities are somewhat in conflict, but in the recent case of *United States* v. *Sanborn*, 28 Fed. Rep. 299, Mr. Justice Gray reviewed all the more important cases and held that the better opinion is, that where a witness attends at the request of a party for whom he testifies, and travels from his place of residence to the place of trial for the sole purpose of testifying, he is entitled to mileage the same as if he had attended in obedience to a subpœna or summons regularly served. That opinion is a construction of Section 848 of the Revised Statutes, but the language of that section in all particulars material to the question of mileage is substantially the same as the sixth section of the act of February, 1799. The learned justice allowed mileage in that case although the witness lived at a greater distance from the place of trial than one hundred miles and was not summoned. While that case is not binding upon this court, the reasons for the ruling seem so cogent that it ought to be followed.

The same rule was held in the old Circuit Court of this District in two reported cases, which was a construction of the very act now under consideration. *United States* v. *Williams and Ray*, 1 Cranch C. C. 178; *Pawler* v. *Semmes*, 1 Cranch C. C. 247.

The objection that mileage cannot be allowed because the witnesses in this case resided at a greater distance than one hundred miles from the place of trial and that their depositions should have been taken as authorized by Section 863 of the Revised Statutes, was also decided by Mr. Justice Gray in the case of *United States* v. *Sanborn, supra,* following the

construction given a statute by Mr. Justice Story, holding that it was optional with the party to take the deposition or procure the personal attendance of the witness, and that in many cases the presence of the witness before the court and jury was so important to a fair trial of the issue that it would be a hardship upon the party to deny the right of mileage where the presence of the witness seemed material or proper. Undoubtedly, as shown by the opinions last above referred to, the court has a discretion in this particular, and ought and would not permit a party to unnecessarily swell the costs by bringing from a distance witnesses whose testimony could as well be presented by deposition. Of course the proper exercise of this discretion depends upon the nature of the issue to be tried and the scope and nature of the evidence given by the witness. In this case the main issue was what amount of recoupment, if any, was the defendant entitled to by the alleged failure of the plaintiff to manufacture the cars, the price of which the action was brought to recover, in accordance with the contract between the parties. The witnesses from St. Louis were the men who had charge of the manufacture of the cars, and it was impossible for the plaintiff to have anticipated the defendant's proof upon these points and rebut it by depositions taken before the trial, nor was there any unnecessary multiplication of witnesses upon a single point. While each of the St. Louis witnesses gave evidence upon the same question to a certain extent, it is also true that each had a more definite and certain knowledge upon some one or more material points than the others. The court should always carefully guard against the improper enhancement of costs by the production of unnecessary witnesses, or by the personal attendance of witnesses where their depositions would as well serve the purpose of the party; but it is not contended in this case that there was any unnecessary multiplication of witnesses or that their depositions would have served the same purpose as their personal attendance at the trial.

Another objection by the defendant to the allowance of these witness fees is that a party to a suit who is a witness in his own behalf is not entitled to fees or mileage for attendance. It is not necessary in this case to pass upon that objection, as these witnesses are not parties to this action. It is true that they are officers or agents of the plaintiff corporation, but that does not render them parties.

It is also objected that this motion comes too late, having been filed after a supersedeas bond had been given and approved; but the supersedeas only prevents execution of the judgment and does not prevent the court from doing any and all acts necessary to complete the record in this court. No bill of exceptions has been signed yet in this case and if the supersedeas stopped all action of this court in the case none could be signed. The statute (R. S. U. S. Sec. 983) provides that the "costs shall be taxed by a judge or clerk of the court and be included in and form a portion of a judgment." In practice the judgment is for costs as well as for the debt or damages, the amount being left blank to be subsequently filled in by the clerk or judge, and may be done at any time thereafter before satisfaction or issue of execution.

It follows that the plaintiff is entitled to have taxed as costs, to form a part of the judgment in this case, the sum of one dollar and twenty-five cents per day for each of the witnesses Sutton, Krueger, Tontrup, Alexander, and Lawless, for the number of days that they were respectively in attendance at court, and also mileage for each of the four first-mentioned witnesses, at the rate of five cents per mile, for traveling from St. Louis to Washington, and the same rate for returning. The witness Lawless is not entitled to mileage, he not having come to Washington for the purpose of testifying in the case.

The clerk will please fill the blank space left for amount of costs in the judgment in accordance with the foregoing opinion.

The further material facts will be found in the opinion of the Court.

*Mr. Enoch Totten* and *Mr. W. D. Davidge* for the appellant:

1. Time was of the essence of the contract in this case. Independent of the statutory requirement for the substitution of some other power for horse power, which the appellee knew or was bound to know, time was of the essence of the contract because in an executory contract for the manufacture and delivery of goods at a specific time no right of property passes to the vendee, and time is of the essence of the contract. *Jones* v. *United States*, 96 U. S. 24.

2. The main controversy in this case grows out of the claim of the defendant for profits it would have made but for the breach of the contract by the plaintiff. The following authorities establish the law to be that any damage which the party has sustained by reason of the breach of the contract may be recovered, provided he can prove his damages with reasonable certainty. 1 Sedg. on Dam. (8th Ed.) Sec. 182; *Griffin* v. *Colver*, 16 N. Y. 491; *Schile* v. *Brokhaus*, 80 N. Y. 620; *Fox* v. *Harding*, 61 Mass. 522; *Waters* v. *Powers*, 20 Eng. L. & Eq. 410; *Wakeman* v. *Wheeler*, 101 N. Y. 205; *Howard* v. *Stillwell Mfg. Co.*, 139 U. S. 199.

In this case, the proofs offered to show the extent of the profits lost were neither uncertain nor remote. The only question that can be raised is whether the crowd demanding accommodation was great enough to fill the 120 cars contracted for, had they been delivered, as completely as it did those in use; and the evidence is conclusive that it was.

Keeping in mind the distinction between the cases where the contract to supply machinery, utensils or vehicles to meet the wants of an established and "going business," and the case where the business is to be established, and it seems that this case is a clear one. The authorities go a great deal farther than it is necessary to go in this case. Where materials were purchased for manufacturing, there being no

other in the market, and the nearest market was distant and the cost of transportation enormous, it was held that the profits of manufacturing (the business being an established one) might be recovered. *Eq. G. L. Co.* v. *Baltimore C. T. Co.*, 65 Md. 73; see also *Moore* v. *Schultz*, 31 Md. 418; *Shafer* v. *Wilson*, 44 Md. 268; *Cullen* v. *Glass Co.*, 108 Pa. 220; *Fletcher* v. *Tayleur*, 33 Eng. L. & Eq. 187; *Alder* v. *Heighley*, 16 M. & W. 117; *Brown* v. *Wimer*, 40 Md. 15; *Lawson* v. *Price*, 45 Md. 123; *Lange* v. *Wagner*, 52 Md. 310; *White* v. *Moseley*, 8 Pick. 356; *Shepherd* v. *Gas Light Co.*, 15 Wis. 318.

The evidence offered and given at the trial below was within the well-established rule which has been acted upon for many years in the Court of Claims, and has been sanctioned over and over again by the Supreme Court. *Speed* v. *United States*, 8 Wall. 77; *United States* v. *Behan*, 110 U. S. 338; *Railroad Co.* v. *Howard*, 13 How. 307; *Masterton* v. *Brooklyn*, 7 Hill, 62.

*Mr. Calderon Carlisle* and *Mr. W. G. Johnson* for the appellee:

1. The record shows that the claim to recoup the alleged loss of profits by the delay in the delivery of the cars was rightly rejected by the court. The evidence on this subject was inadmissible under the pleadings, the only pleas being the general issue and a plea of set-off. As the particulars of debt annexed to the plea of set-off showed a claim for unliquidated damages, the plaintiff was entitled to disregard. it, as no evidence could be offered under it.

The right to recoup is a privilege accorded by modern practice to prevent circuity of action and further litigation on the same matter; but such recoupment cannot be claimed unless the defendant files a definite statement of his claim, with notice of it to the plaintiff sufficiently in time before the trial term to enable the latter to meet the matter with proof on his side. *Dermott* v. *Jones*, 23 How. 235; *Mayor* v. *Trowbridge*, 5 Hill, 71; *Barber* v. *Rose*, Id. 81; *Eldridge* v. *Mather*, 2 N. Y. 158.

In this case no such notice was given, but leave was asked by defendant on the third day of the trial, after beginning his evidence, to file the notice, which was granted over plaintiff's objection. The trial justice conceived it to be within his power and discretion to grant this indulgence by way of amendment, but it is submitted that no such amendment could be allowed to take effect during the trial, and that the defendant had lost all right to offer any evidence by way of recoupment, and was remitted for the enforcement of its rights, if any, to its cross-action.

Even supposing the trial justice to have had the discretion to permit an amendment, by which the particulars of debt annexed to the plea of set-off might have been relied upon by the appellant, as a notice of recoupment, the appellant chose not to accept this indulgence and not to rely upon the particulars of debt annexed to the plea of set-off as a notice of recoupment, but substituted for it something different in form and substance, a notice of recoupment, properly confined to the subject matter of the plaintiff's suit, and making a different definite claim from that made in the particulars of debt.

2. It is submitted that the appellant, by its conduct prior to the delivery of any of the cars, is estopped from setting up any claim to damages arising from the non-fulfilment of the requirement as to time.

If time was of the essence of the contract, appellant had the right, upon the expiration of the time, to refuse to receive the cars, as ruled in *Jones* v. *United States*, 96 U. S. 24. But having urged and required appellee to go on after the time expired for delivery of the cars, and having thereby induced it to complete and deliver the cars, appellant cannot now exercise its right in opposition to its previous consent. *Swain* v. *Seamans*, 9 Wall. 274; *Jones* v. *United States*, 96 U. S. 29.

3. The evidence utterly fails to establish any fact from which the jury could by any process of calculation or by any proper inferences ascertain any damages.

4. Leaving out of view the foregoing objections to the appellant's claim, it was rightly rejected by the court, because the claim is of such nature that, howsoever sought to be established, it is inadmissible under the fixed rules of law governing the measure of damages for breach of contract, whether in a direct action for such damages or by way of recoupment in a suit on the contract. The claim is for anticipated profits which, it is alleged, would have resulted, not from the fulfilment of the contract sued on, but from the use of the article contracted for in necessary connection with other articles, machinery, and rights, in a wholly independent enterprise involving the greatest variety of business conditions, peculiar and variable circumstances and multitudinous activities, in which the article, which was the subject of the contract, was but one of this numerous and varied combination of factors. The general rule that anticipated profits are not within the measure of damages in actions upon contracts will doubtless not be denied, and is too well established to be the subject of controversy. *Howard* v. *Stillwell*, 139 U. S. 206. The claim in this case is not within any recognized exception to the rule, and the authorities cited by appellant wholly fail to sustain the contentions made, as an analysis of the cases demonstrates. Many of the cases cited are actions for torts, and in these actions a wholly different rule prevails. *Brown* v. *Werner*, 40 Md. 20; *Lawson* v. *Price*, 45 Md. 139; *Railroad Co.* v. *Pumphrey*, 59 Md. 400; *Gas Light Co.* v. *Coal Tar Co.*, 65 Md. 86.

A party can only be held responsible for such consequences as may be reasonably supposed to have been in the contemplation of both parties at the time of making the contract, and no consequence which is not the necessary or ordinary result of a breach can be supposed to have been so contemplated, unless full information be imparted to the party sought to be held liable at the time of entering into the engagement. *Telegraph Co.* v. *Gildersleeve*, 29 Md. 232, 249.

Every contention made by the appellant in this case with reference to the measure of damages is met by the reasoning of the Supreme Court of the United States in *Howard* v. *Stillwell Mfg. Co., supra.* The principles announced in that case are supported by other decisions of the Supreme Court before and since. *Telegraph Co.* v. *Hall,* 124 U. S. 444; *Gas Co.* v. *Western Co.,* 152 U. S. 200; *Primrose* v. *Telegraph Co.,* 154 U. S. 1.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This was an action of *indebitatus assumpsit* brought by the American Car Company, a corporation of the State of Missouri, against the Washington and Georgetown Railroad Company, a corporation of the District of Columbia, to recover the balance of the contract price for one hundred and twenty cable street cars, delivered to and accepted by the defendant.

The defendant company was incorporated by an act of Congress in 1862, and had been operating lines of street cars in the city of Washington, drawn by horses, for nearly thirty years, when it was deemed necessary that there should be a change in the motive power of the road. The Congress of the United States, by acts of March 2, 1889, and August 6, 1890, required the defendant to wholly dispense with horse power on the lines of its road, and to substitute therefor either an underground cable worked by steam, or other power mentioned in the statutes. By the act of 1890, it was provided that if the company should fail to so change its power on all its lines within two years, its franchises as a corporation should be forfeited. At the time of the contract made by the defendant with the plaintiff for furnishing the 120 cars, the substitution of underground cable for horse power on the Seventh street line of the defendant's road, had been made, and the cars thereon were being operated by cable power; and the time limited for making the change on its other lines would expire on the 6th of August, 1892.

It was in view of this state of things, and to conform to the requirements of the acts of Congress, that the defendant company, on the 21st of November, 1891, entered into a contract with the plaintiff company for the construction and delivery by the latter company of the 120 cable cars, according to specifications.

This contract, as shown in evidence, was as follows:

"St. Louis, Mo., *November 21st, 1891.*

" American Car Company hereby agrees to furnish and deliver to the Washington and Georgetown Railroad Company f. o. b. cars in Washington, D. C., 120 open trail cars for cable road, complete, for the sum of seven hundred and forty-nine dollars each, and to receive in part payment therefor 20 open cars, to be selected by the said railroad company, for the sum of five thousand (5000) dollars, f. o. b. cars in Washington, D. C. Delivery of new cars to be made in May, June, and July, 1892, and delivery of old cars to be made within thirty days *after the opening of the new cable lines* of said company. Specifications as follows: General Style and Finish—Similar to open cars now in use on 7th St. line of said company ;" etc.

The evidence shows that no cars were delivered until the 31st of July, 1892, and then only 20, and deliveries were made in various numbers at different times from the time of the first delivery to the 10th of October, 1892, when the last two cars of the 120 were delivered. Large payments were made by the defendant on account of cars received; but, according to the claim of the plaintiff, there remained a balance due, after the last delivery of cars, of $18,238.89, and for which this suit was brought.

The declaration contains the common counts in *indebitatus assumpsit*, according to the simplified form, and does not count upon the special contract. It is, however, entirely competent to the plaintiff to sue in *indebitatus assumpsit*, and give in evidence the special contract, not as proof of the promises declared on, but as furnishing the rule by which

the damages for its breach are to be measured. And this right of the plaintiff to declare generally, as on the common counts, and use the special contract in evidence, is not affected by the fact that the work was not completed and delivered until after the time fixed for its completion and delivery. *Brown* v. *Foster*, 51 Penn. St. 165.

To this declaration of common counts in *assumpsit*, the defendant pleaded *non-assumpsit* and set-off; and filed with the plea of set-off, particulars of demand, claiming unliquidated damages for the violation of contract for the construction and delivery of the cars, in the non-delivery within the time specified, to the amount of $96,000.

After the trial had commenced and proceeded to a certain stage, the defendant filed notice of recoupment, as against the claim of the plaintiff; and in that notice the claim is set up—1st. That the plaintiff failed to deliver to the defendant any of the said cars in May, June, and July, 1892, as required by the contract, and failed to deliver a large number of the said cars, to wit, sixty, until after the 1st of October, 1892, and failed to complete the delivery of all of said cars until after the 1st of November, 1892, whereby the defendant was deprived of the use and benefit in its business of the undelivered cars, and of the profits that would have accrued to the defendant, had the stipulations of the said contract, as to the delivery of said cars, not been violated by the plaintiff, and had said cars been delivered to the defendant according to the contract; and the defendant claims, by reason of the default of the plaintiff, the sum of $50,000.

There was evidence given tending to support the issues made by the pleadings, and, upon the whole evidence, the respective parties prayed for instructions to the jury, as to their rights under the issues.

The prayers on the part of the plaintiff were all granted, and those on the part of the defendant, except the sixth, seventh and ninth in the series, were rejected by the court; and the defendant excepted to the rulings of the court in

granting the prayers of the plaintiff, and in rejecting those of the defendant; and it also excepted to certain designated parts of the court's charge to the jury.

The defendant, as appellant in this court, assigned several errors upon the rulings of the court below; but most of such errors assigned do not require any extended consideration by this court. In order to see what are the questions presented in this court, it is necessary to see what questions have been decided by the court below, in its final rulings upon the whole evidence of the case. These can be best shown by referring to the prayers ruled upon by the court.

The first, second, and fourth prayers on the part of the plaintiff, taken in connection with the sixth and seventh prayers of the defendant, which were granted, in respect to the general style and finish, and manner of construction of the cars, and what expenditure by the defendant was allowable to supply or remedy defects in the work, would seem to be unexceptionable; and we do not understand the defendant to make any serious objection to those instructions as granted.

But the court instructed the jury, by the third prayer of the plaintiff, that if the cars were constructed in substantial compliance with the contract and specifications as defined by the court, then they should find for the plaintiff the amount of the contract price of said cars, less any payments made on account thereof, or for freight thereon, which they might find from the evidence to have been made by the defendant. And by the fifth prayer, the jury were instructed that, upon the whole evidence, they were not at liberty to deduct from any amount they might find from the evidence to be due the plaintiff, anything on account of the delay in delivery of the cars in the city of Washington. And further, the court in its charge to the jury, in speaking of the claims of the defendant by way of recoupment, said : " The damages they claim are two-fold : First, those resulting from the delay in the delivery of the cars; but I have found as matter

of law that the defendant is not entitled to any damages because of the delay in delivery; so you are relieved from considering that question. You will not consider that, whether there was any damage arising to the defendant by reason of the delay in the delivery." This passage in the charge was specially excepted to by the defendant.

On the part of the defendant, the court was asked to instruct the jury, by the first prayer offered, that under the true construction of the contract given in evidence, it was the duty of the plaintiff to deliver the cars in the months of May, June, and July, 1892; that this obligation was of the essence of the contract, and the failure of the plaintiff so to deliver, if found by the jury, constitutes in law a breach of said contract; and for which breach the defendant is entitled to damages to be recouped from any balance which the jury may find due to the plaintiff under said contract. This prayer, as will be observed, simply asserts the right of the defendant to damages for the breach of the contract, by way of recoupment, without reference to any particular mode of ascertaining or computing the damages. But, by the tenth, eleventh and twelfth prayers of the defendant, the court was asked to instruct the jury, that the defendant was entitled to be allowed as damages, to be deducted from the contract price of the cars, for any profits that were lost, by reason of the non-delivery of the cars, or that could have been made by the use of the cars, if they had been delivered as required by the contract; and these prayers were rejected by the court, and necessarily so, after granting the prayers on the part of the plaintiff, declaring that the defendant was not entitled to anything for being deprived of the use of the cars after the time when they should have been delivered under the contract, down to the time when they were actually delivered.

These prayers, those granted and rejected, present the leading and controlling questions of the case; and while there were other propositions made, they were subordinate

and dependent in their character, and therefore not necessary to be specially remarked upon.

That the plaintiff was aware of the necessity for compliance with the terms of the contract, as to the time fixed for the delivery of the cars, would seem scarcely to admit of a doubt. It knew that the cars were intended to enable the defendant to make a change or transition from one motive power to another, and a change of one make or structure of car for another of quite a different structure. That such change was not a work of gradual operation or adjustment, but the transition involved, by operation of mechanical laws, the simultaneous substitution of one system for and the displacement of the other; and this, by a public statute, was required to be effected by a certain date. The plaintiff, by its officers, well understood, from the very nature and terms of the contract, that the cars contracted for were intended to supersede and take the place of horse cars, and to enable the defendant to effect the change from horse power to steam cable power, and that the two systems could not be operated together on the same road. There is no question as to the number of cars delivered, nor as to the time when the several lots or parcels were actually delivered; and that all, except the first twenty, were delivered between the 3d of August and the 10th of October, 1892. The primary question is, whether there was a breach of contract, causing damage to the defendant, and if so, how is such damage to be ascertained and measured?

In a contract made of the nature and under the circumstances of the contract in this case, time is of the essence of the contract. And, unless the defendant has agreed for an extension of time for the performance of the contract, or has, by some decisive act, induced or given warrant to the contractor to change his position, or to believe that time of performance would be dispensed with, if a breach in respect to time has actually occurred, the latter must answer in damages for the legal consequences of such breach. *Jones v.*

*United States,* 96 U. S. 24.   If sufficient facts be shown, the party entitled by the terms of the contract to insist upon strict performance as to time, may be estopped.   But in this case, the correspondence in the record would seem plainly to indicate a pressing desire on the part of the defendant for performance, and a full admonition to the plaintiff, that the matter of time was not only important but of pressing necessity to the defendant.

In cases of executory contracts, of the class of the one here involved, the general principle for estimating the damages for breach, is that laid down in the leading case of *Hadley* v. *Baxendale,* 9 Exch. 341.   That case has been accepted and followed, both in England and in this country, with but few exceptions, as establishing the correct general rule for the measure of damages for breach of contract; though there may be cases, owing to peculiar facts and circumstances attending the contract, where this general rule would have to be applied with some qualification.   The rule laid down in *Hadley* v. *Baxendale,* and as formulated by the court, may be stated thus:

" Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract, should be such as may fairly and reasonably be considered, either as arising naturally, *i. e.* according to the usual course of things, from such breach of contract itself; or such as may reasonably be supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.   If the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant, and thus known to both parties, the damages resulting from the breach of such contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated.   But, on the other hand, if these special circumstances

were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract." This rule has been quoted with approval by the Supreme Court of the United States, in several cases, as appears in the cases of *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444, 456; *Howard* v. *Stillwell Manfg. Co.*, 139 U. S. 199, 207, and *Primrose* v. *West. Union Tel. Co.*, 154 U. S. 29.

The rule has been under review in the English courts in a great many cases; and it was extensively discussed in the case of *Cory* v. *Thames Iron Works Co.*, L. R. 3 Q. B. 181. In that case the plaintiff claimed damages for the non-delivery at the time specified, of the hull of a floating boom derrick, which they intended to use for working machinery in the discharge of coals; but the defendants were not aware of this intended use, and supposed that the hull was wanted for the storage of coals. It was contended for the defendant, that no damages were recoverable, because the two parties had not in contemplation the same results from the breach; but the court held this an inadmissible construction of the rule in *Hadley* v. *Baxendale*; and that the true rule is, that the vendor is always bound for such damages as result from the buyer's being deprived of the ordinary use of the chattel; but that he is not bound for the further *special* damage that the buyer may suffer, by being deprived of the use of it for some *special and unusual purpose*, not made known to the vendor when he contracted for the delivery of the article.

While such is the general rule upon the subject, for the measure of damages, the question here is as to the manner of estimating and showing the amount of damages sustained. The defendant insists that it should be allowed to show what amount of receipts and profits, in the way of passenger fares, would have been realized by it, if the cars

had been delivered in accordance with the terms of the contract. But the plaintiff objects to this, and insists that the defendant is not entitled to any such damages, because of the uncertain, contingent, and speculative nature of such profits; that there is no method by which such profits could be ascertained and determined, and therefore the defendant cannot be allowed to show in reduction of the contract price of the cars, a mere probable estimate of profits that would have been made, if the cars had been delivered in due time. And in this contention there is certainly great force, and, indeed, great intrinsic difficulty in dealing with the proposition urged by the defendant. It would seem to be simply impossible to reduce the damages to a certainty, or to any sum approximating certainty, by any attempt to show the number of persons who would have traveled on the cars, or to show the amount of loss sustained by being deprived of the use of the cars to carry persons who desired to be carried.

This question of probable or estimated profits that could have been made if the contract had been performed, is one that has undergone great consideration by courts of the highest authority in the country; and the general conclusion reached has been that such method of arriving at the damages sustained for breach of contract is too uncertain and speculative to receive judicial sanction, except in cases where the possible or probable profits are the very objects of the contract, and are necessarily in the contemplation of the parties.

In the case of *Blanchard* v. *Ely*, 21 Wend. 342, the action was for the price of a steamboat; and the defense was that part of the machinery of the boat was unsound and imperfect, by reason whereof considerable delay was caused; and that the loss of the probable profits that would have been made upon the trips that might have been run during the time the vessel was delayed on account of the imperfections in its construction, should and might be recouped in the action for the price of the boat. But the court held that

such contingent profits could not be allowed. That case has been approved by a good many subsequent cases, and has been quoted with approval by the Supreme Court of the United States, in *Howard* v. *Stillwell Mfg. Co., supra.* The same principle is fully and clearly stated and made the rule of decision, in the case of *Pennypacker* v. *Jones,* 106 Penn. St. 237; and also in the case of *The Callaway Mining & Manfg. Co.* v. *Clark,* 32 Mo. 305, and both of which cases are referred to with approval in the opinion of the court in *Howard* v. *Stillwell Manfg. Co., supra.*

In the case of *Abbott* v. *Gatch,* 13 Md. 314, the action was by the builder against the owner to recover the contract price for building a mill, and the effort was made there to recover estimated profits lost by reason of the plaintiff's failure to complete the mill within the stipulated time for completion. But the court, in a very full and carefully considered opinion, held that such estimated profits were too speculative and uncertain to be made the standard of damages to be allowed by way of recoupment. In that case many of the previous cases upon the subject are reviewed, and the conclusion was fully sustained by authority, that estimated or probable profits for the time that the party was deprived of the use of his mill, could not be shown in proof to reduce the claim of the plaintiff for the contract price.

In the case of *Griffin* v. *Colver,* 16 N. Y. 489, a leading case upon the subject, the facts were that the plaintiff agreed to build a steam engine, with boilers, etc., for the defendants, and to deliver it to them on a day certain. He failed to do so, and a delay of one week occurred, during which time the defendants lost the use of certain machinery for the sawing and planing of lumber, which the steam engine was intended to drive. The plaintiff having brought his action for the price of the engine, the defendant sought to recoup their damages for the failure to deliver it at the time fixed by the contract. The court, in a very clear and

learned opinion by Mr. Justice Selden, held it to be clear, that the defendants were not entitled to measure their damages by estimating what they might have earned by the use of the engine and the other machinery, had the contract been complied with.   Nearly every element, said the court, entering into such a computation would have been of that uncertain character which has uniformly prevented a recovery for speculative profits.

But this question of the right to recover probable or estimated profits for failure to complete work or. deliver an article by a time certain, according to the terms of contract, would seem to be concluded by the decision in the case to which we have already referred, of *Howard* v. *Stillwell Manfg. Co.*, 139 U. S. 199.   That was an action by a contractor to recover the contract price for putting up mill machinery, and where the defendant, by way of reconvention or recoupment, sought to recover from the plaintiff the amount of losses caused by the failure of performance of the contract by the plaintiff within the time stipulated; and the court held, upon full examination of the decisions, that anticipated profits of the defendant resulting from grinding wheat into flour and selling the same, had the mill been completed at the date specified in the contract, could not be recovered by way of damages for delay in putting up the mill.   It was laid down as a settled general rule, subject to certain qualifications, that anticipated profits, prevented by the breach of acontract, are not recoverable as damages for such breach.

But though this be the general rule, does it necessarily follow that a party damnified by breach of contract, in a case like the present, has no redress?   The law in all cases seeks to do complete justice; and the general rule is, in cases of the breach of contract, that the injured party is entitled to recover all his damages, including gains prevented as well as losses sustained.   *Griffin* v. *Colver, supra.*   It becomes then simply a question, by what principle or method are the damages sustained to be ascertained and computed.

5 Ct. App.—35

It must be by some certain and definite rule or standard, calculated to reach results with certainty, and not one that necessarily involves elements of contingency, speculation, and uncertainty, which may lead to great injustice. In the case just referred to, of *Griffin* v. *Colver, supra,* the court, while holding that estimated or probable profits could not be shown as the measure of damages, yet held that the ordinary rent or hire which could have been obtained for the use of the machinery whose operation was suspended for want of the steam engine, could be recovered as damages. And so in the case of *Abbott* v. *Gatch, supra,* while estimated or probable loss of profits were excluded as the measure of damages, it was held that the defendant was entitled to damages for the breach of the contract, and that the standard or criterion by which the defendant's loss was to be estimated was the fair rent of the mill for the time he was kept out of its use, by reason of the plaintiff's failure to complete it within the time stipulated.

In the case of *Brown* v. *Foster,* 51 Penn. St. 165, the action was brought by the plaintiffs to recover for work that was to be done for a steamboat by a day fixed, for a specified price, in which they made default as to time. The Supreme Court of Pennsylvania, in an opinion by Mr. Justice Strong, held, that the measure of damages for the delay was the ordinary rental or hire of such a boat while the plaintiffs were in default; and the court rejected, as wholly inadmissible, the proposition made to measure the damages by what the boat could have earned, had there been no default on the part of the plaintiffs as to the time for doing the work. That is to say, estimated or anticipated receipts and profits of the boat could not be allowed as the measure of damages, but the ordinary rent or hire of such a boat would be allowed as the proper measure of the loss sustained. And this we think is just and reasonable. Because one method of measuring the damages sustained may be rejected, as being too uncertain and speculative, it does not necessarily follow that

all others are inadmissible, and that the party damnified should go without redress.

Now, it is clear, the defendant was entitled to have the cars delivered to it, according to the terms of the contract, unless the plaintiff was relieved from that obligation by some competent legal authority; and the defendant was entitled to have the use of the cars from the time they were required to be delivered. Being deprived of the use of the cars, by the act or default of the plaintiff, it would seem, upon fair and reasonable principle, that the defendant is entitled to an amount equivalent to a reasonable *hire or rent* for such cars, for being deprived of the use thereof, as the measure of damages, for the time that they *could and would have been in actual service*, if delivered in accordance with the terms of the contract, to the time they were actually delivered, less the interest on the contract price of the cars, during the time for which such equivalent amount to hire or rent is allowed. This is clearly within the principle of the case of *Hadley* v. *Baxendale*, and of the cases to which we have referred, where hire or rent has been allowed as the measure of damages. And the claim for recoupment, claiming that the "defendant was *deprived of the use and benefit in its business of the undelivered cars*, and of the profits that would have accrued to the defendant, had the stipulation of the said contract as to the delivery of the said cars not been violated by the plaintiff," etc., is sufficiently comprehensive to embrace the admeasurement of damages by allowance of an amount equivalent to rent or hire.

With this view of the case, it follows that there was error below in granting the third prayer of the plaintiff, as that prayer excluded all consideration of allowance to the defendant of damages for the delay in the delivery of the cars; and that there was error in granting the fifth prayer of the plaintiff—that prayer denying all right to such allowance.

It also follows from what we have said that there was error in refusing to grant the first, second, and third prayers

of the defendant; and that the exception taken to the paragraph in the court's general charge to the jury, was well taken. But the court did not err in refusing to grant the tenth, eleventh, and twelfth prayers of the defendant, nor did it err in excluding the evidence offered by the defendant, as to the means of ascertaining the loss of profits, and referred to in the third assignment of error. Nor do we perceive any error in excluding as evidence the contract for closed cars dated November 1, 1891. In what we have said, we have covered and disposed of all the substantial questions of the case; and it is unnecessary further to prolong this opinion.

It follows that the judgment appealed from must be reversed, and the cause be remanded for a new trial, in accordance with the principle for ascertaining the damages for breach of the contract, stated in this opinion.

There was a motion made by the plaintiff, after trial and verdict, to have fees and expenses of non-resident witnesses taxed in the costs to follow the judgment, according to a statement filed. The decision upon a question of costs when independent of the main questions in litigation, is not ordinarily a subject of appeal. Here, the question of costs in the court below will be reopened upon the reversal of the judgment by this court; but the same question may recur upon a future trial. The question, as to the extent of allowance for the attendance of non-resident witnesses, seems to have been very fully and carefully examined by the learned justice in the court below; and while there is considerable diversity of opinion and practice upon the subject, in the different judicial circuits of the United States, we think the result reached by the justice below is correct, and well supported by the statutes to which he refers. His conclusion, therefore, ought not to be disturbed.

*Judgment reversed, with costs to appellant in this court, and cause remanded for new trial.*

On March 14, 1895, *Mr. Carlisle* and *Mr. Johnson,* on behalf of the appellee, filed a motion for a rehearing.

On April 11, 1895, the motion was denied, Mr. Chief Justice ALVEY delivering the opinion of the Court:

The motion for rehearing in this case must be overruled. It is based upon the supposition that there was no evidence given in the court below upon which the jury could have estimated the amount which would have been equivalent to a reasonable hire or rental of the cars for the time that the defendant company was actually deprived of the use of the cars by the default of the plaintiff company. That is true only to a very limited extent. All the elements for such estimation were furnished in the evidence given on the trial; that is to say, the non-delivery of the cars as required by the contract, and the inconvenience and damage suffered by the defendant, by reason of such default of the plaintiff. The only further evidence needed to make the evidence definite was the opinion of some competent witness or witnesses to inform the jury as to the rental value of such cars for the time that the defendant was deprived of their use. This is only a different mode of showing the amount of damages sustained from that attempted by the defendant, and which was ruled to be inadmissible. The claim for damages by the defendant, by way of recoupment, was clearly within the issues made by the pleadings in the case. The court, by granting the fifth prayer of the plaintiff, and in its general charge to the jury, virtually precluded all right of the defendant to show damages resulting from the delay in the delivery of the cars as required by the contract. The court declared that it had "found as matter of law that the defendants were not entitled to any damages because of the delay in delivery, and therefore the jury were relieved from considering that question." This court, upon review, could not affirm the correctness of that instruction.

The act of Congress of February 9, 1893, under which

this court was organized, provides that this court on appeal shall review the judgments, orders or decrees appealed from, "and affirm, reverse, or *modify the same as shall be just.*" This is substantially the same provision as that found in Section 701 of the Revised Statutes of the United States, applicable to the Supreme Court of the United States; and under that provision of the statute it has been repeatedly held by the Supreme Court, that where it is apparent upon the record that the case has been mistried, or tried upon some erroneous theory as to the rights of the parties and the amount to be recovered, the court will reverse the judgment and remand the cause that it may be retried. As an instance of this, we may refer to the case of *Mills* v. *Scott*, 99 U. S. 25, 30. That was an action at law for the recovery of certain bills, amounting to $100,000, and the verdict and judgment below were for the full amount of the claim. But the Supreme Court said the only recovery which the declaration permitted was for $40,000, and not for $100,000, which the jury had found, and upon which verdict a judgment had been entered. This error in the record, said the court, "is not specifically pointed out in the brief of counsel for the defendant, who was not present at the argument; but it is evident that it was at the erroneous apportionment of the indebtedness to the estate of the deceased that he aimed, when insisting that the remedy of the plaintiff should have been by a bill in equity, and not in this form of action. Be this as it may, where an error in the amount recovered is apparent upon the record, and it could have been remedied by an amendment of the pleadings, this court will, of its own motion, in the interest of justice, direct that it be corrected, and, if necessary, order a new trial or further proceedings for that purpose."

And so in the case of the *Railroad Company* v. *United States*, 108 U. S. 277, 281. That was an action at law to recover taxes alleged to be due under certain acts of Congress. There were certain findings by the court, but it was found, when the case came into the Supreme Court, that

they were not sufficiently specific as to the losses for which deductions were claimed by the defendant. To meet this difficulty of the case, and to prevent the miscarriage of justice, the court said: "As the omission to make the finding sufficiently specific in this particular undoubtedly arose from the fact that the court ruled as matter of law that no deductions could be made on account of losses of this character, we will remand the cause so that further inquiry may be had on that point. This we have authority to do under Section 701 of the Revised Statutes, which allows a cause to be remanded for such further proceedings to be had in the inferior court as the justice of the case may require." And the judgment was accordingly reversed, and the cause remanded for retrial.

The application of this principle, however, to prevent the miscarriage of justice, can only be invoked where it is plainly apparent from the record that a recovery has been had in excess of the right of the party claiming, or where, from some misconception in presenting a claim, a party is placed in peril of losing and being concluded with respect to an important right, of which he sought the benefit. We do not, of course, intend to be understood as in any manner qualifying the general principle that questions not made on the trial and presented to the court below for decision can not be entertained by this court. But in this case, the question of the right to recoup for the damages sustained for the delay in the delivery of the cars was distinctly made, both in the pleadings and the proof; and the only difficulty that has arisen is as to the nature of the proof by which the *quantum* of damages may be shown. There is no just ground shown for rehearing, and *the motion is therefore denied.*