[No. 7805.   Decided March 13, 1909.]

C. F. MENDENHALL, *Administrator of the Estate of Frank C. Mendenhall, Deceased, Respondent,* v. WILLIAM T. DAVIS *et al., Appellants.*[1]

PLEADINGS — ANSWER — DENIALS — SUFFICIENCY — JUDGMENT ON PLEADINGS. In an action on a note and chattel mortgage, in which the answer admits the execution of the note and mortgage and attempts to set out an affirmative defense which showed that the indebtedness was not paid, a denial that the defendants "owe the sum of $900, or any other sum or amount whatsoever on account of the note and mortgage above described, or at all," is not sufficient as a denial to put plaintiff upon proof or prevent a judgment for plaintiff on the pleadings.

CONTRACTS—FOR PERSONAL SERVICE—PERFORMANCE—DISCHARGE. A contract for personal services is discharged by the death of the party rendering the same.

SAME—DAMAGES ON DEATH OF EMPLOYEE—SET-OFF AND COUNTERCLAIM. An action for damages will not lie for breach of a contract for personal services, caused by the death of the party employed, but the employer may, when sued by the estate for the sum agreed to be paid for the service, set-off or plead in bar the damages he has sustained, if any, by reason of deceased's failure to perform.

EXECUTORS AND ADMINISTRATORS—ACTIONS—SET-OFF AND COUNTERCLAIM. Where as part consideration for a note, the payee agreed to work for the maker for six months as a dentist, giving defendant

[1]Reported in 100 Pac. 336.

one-half of his earnings, and died before completing the contract, in an action by his executors on the note, the maker may offset his damage for failure of the decedent to perform the contract, if the same was more favorable to defendant than any contract he could have made with any other person equally skilled; and the measure of such damage is the difference between the contract made and a contract for service with one equally skilled.

SAME—SET-OFF AND COUNTERCLAIM—PRESENTATION OF CLAIM.  In an action brought by an executor or administrator, a demand against the estate may be offset to the extent of plaintiff's recovery, without previous presentation of a claim therefor, as required by Bal. Code, § 6226, under Pierce's Code, § 1093, providing for a set-off in such cases "in the same manner as if the action had been brought by and in the name of the deceased."

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered October 14, 1908, in favor of the plaintiff, upon the pleadings, after sustaining a demurrer to the answer, in an action upon contract. Reversed.

*Hathaway & Alston,* for appellants.

*O. T. Webb,* for respondent.

CHADWICK, J.—On the 29th day of June, 1907, Frank C. Mendenhall was engaged in the practice of dentistry in the city of Everett, and on that day sold his business to defendant William T. Davis, for the sum of $1,700, of which the sum of $800 was paid in cash, and $900 was made payable on or before one year after date, with interest at the rate of eight per cent per annum. To secure the payment of the $900, defendant William T. Davis executed a chattel mortgage covering the office furniture and fixtures, and all the tools, implements, and materials contained in his office. As a part of the transaction, the parties entered into the following contract, in writing:

"This contract, made and entered into this June 29th, 1907, by and between Frank Mendenhall of the first part and William T. Davis of the second part, witnesseth:

"That, Whereas, a contract of purchase and sale has been entered into by and between the parties hereto as of this

date, as part consideration for said bill of sale, said Mendenhall hereby agrees to and with said Davis to render to said Davis six months' services as dentist in dental surgery in his office, said Mendenhall to retain fifty per cent of all money collected on new work performed by him; and he hereby further agrees not to enter into the business of dentistry in the city of Everett within five years from date hereof."

Mendenhall died October 29, 1907, and this action is prosecuted by the administrator of his estate. Defendants made the following plea in bar of plaintiff's complaint:

"(2) That at the time of executing the bill of sale aforesaid and note and mortgage referred to in the plaintiff's complaint herein and as a part of the same transaction, the said Frank Mendenhall and defendants entered into a contract whereby and wherein it was agreed that the said Frank Mendenhall was to render to the said defendants six months' services as dentist in dental surgery in his office, located at the premises described in said mortgage, and that said defendants were to receive fifty per cent (50%) of all moneys collected on new work performed by said Frank Mendenhall; that such services were to be as a part of the consideration for the money paid and agreed to be paid by the said defendants to the said Frank Mendenhall, a copy of which contract is hereto annexed marked Exhibit No. "2," and made a part of this complaint; that on account of serious illness and death he became incapable of performing further services.

"(3) That in accordance with said contract the said Frank Mendenhall did perform services for the defendants as dentist in dental surgery for the period of four (4) weeks and no more; that on account of serious illness and death he became incapable of performing further services, and that he earned, during said four weeks in new work, the sum of four hundred and eighty-eight dollars and 50-100 ($488.50), of which money the defendants were entitled to the sum of two hundred and forty-four dollars and 25-100 ($244.25) under and by their agreement with the said Frank Mendenhall; that of said two hundred and forty-four dollars and 25-100 ($244.25), the said Frank Mendenhall paid

to the defendants the sum of of seventy dollars and 25-100 ($70.25) and no more; that the services which the said Frank Mendenhall agreed to render to defendants as a part of the consideration for the note and money paid to the said Frank Mendenhall by the defendants as aforesaid, was reasonably worth to the defendants the sum of thirteen hundred and sixty-five dollars and 40-100 ($1,365.40).

"(4)   That the goods and chattels described in the bill of sale above referred to and the mortgage referred to in the plaintiff's complaint here, were worth not to exceed four hundred and thirty-five dollars ($435), and that the consideration for the remainder of the seventeen hundred dollars ($1700) which the defendants paid and agreed to pay the said Frank Mendenhall, was the services which the said Frank Mendenhall agreed to render to the defendants as aforesaid."

A demurrer was sustained to the plea in bar.  Plaintiff then moved for judgment on the pleadings, which being allowed, defendants have appealed.

Inasmuch as respondent meets the argument of appellants with the proposition that there is no proper denial of the indebtedness in appellants' answer, and for that reason a judgment on the pleadings was properly sustained, we shall dispose of that question before discussing the more important differences raised by the record.   After admitting the execution of the note and mortgage, appellants said:

"The defendants deny that they owe the plaintiff the sum of $900, or any other sum or amount whatsoever, on account of the note and mortgage above described, or at all."

If the demurrer was properly sustained to the affirmative defense, the motion for judgment on the pleadings was properly granted, under the rule announced in the case of *Columbia Nat. Bank v. Western Iron & Steel Co.*, 14 Wash. 162, 44 Pac. 145.   But that case does not hold that an admission, either direct or technical, of a debt due precludes a party from pleading an offset or counterclaim.   The case of *Edson v. Dillaye*, 8 How. Pr. 273, was adopted as the

authority upon which to rest the decision of the court. The rule there stated is as follows:

"Having admitted the making of the note *and not having set up any fact showing why they ought not to pay it,* their liability to pay is a legal conclusion, from which the defendants cannot escape."

Therefore, admitting that the amount of the note was due from appellants to respondent, our only inquiry should be as to the correctness of the order sustaining the demurrer to the affirmative defense. The demurrer admitted the facts set out in that part of the affirmative answer hereinbefore quoted. It will be seen, that a part of the consideration for the note was the agreement of Mendenhall that he would remain in the office for six months, during which time he would render services as a dental surgeon; that his earnings were to be equally divided between the parties to the agreement; and that, after one month's services, he was stricken with an illness of which he died. The position of the respondent is that the contract, in so far as it bound his decedent to render personal services, was discharged by his death. The rule relied on by respondent is stated in Anson, Law of Contracts (8th Am. ed.), p. 395, as follows:

"A contract which has for its object the rendering of personal services is discharged by the death or incapacitating illness of the promisor."

The following authorities are cited to sustain this doctrine: *Robinson v. Davison,* L. R. 6 Exch. 269; *Spalding v. Rosa,* 71 N. Y. 40, 27 Am. Rep. 7; *Janin v. Browne,* 59 Cal. 37; *Singleton v. Carroll,* 6 J. J. Marsh. 527, 22 Am. Dec. 95; *Blakely v. Sousa,* 197 Pa. St. 305, 47 Atl. 286, 80 Am. St. 821; 9 Cyc. 631.

It occurs to us that a deeper principle is involved in the case at bar. Unquestionably respondent's testator was relieved of personal performance of the contract by his death; but should that event preclude appellants from pleading, as an off-set or counterclaim, the loss of the service, when it

had been promised as part consideration for a debt contract-
ed by the appellants? The cases cited affirm this principle.
If "A" hire "B" to perform a service, personal in its nature,
at a stipulated wage, and no concern is taken in the contract
of death or illness, the death or illness of "B" will so release
him of his obligation that no damage will follow the un-
timely termination of the contract. For, as was said in
*Robinson v. Davison, supra,* adopting the language of the
court in *Hall v. Wright,* 1 E. B. & E. 793:

> "Now it must be conceded on all hands that there are
> contracts to which the law implies exceptions and conditions
> which are not expressed. All contracts for personal services
> which can be performed only during the life time of the
> party contracting, are subject to the implied condition that
> he shall be alive to perform them; and should he die, his
> executor is not liable to an action for the breach of con-
> tract occasioned by his death. So a contract by an author
> to write a book within a reasonable time, or by a painter to
> paint a picture within a reasonable time, would, in my judg-
> ment, be deemed subject to the condition that, if the author
> became insane, or the painter paralytic, and so incapable of
> performing the contract by the act of God, he would not be
> liable personally in damages any more than his executors
> would be if he had been prevented by death."

But it does not follow that the rule would be the same
if "A" had paid to "B" $800 in cash, agreed to pay $900
in the future, and had executed and delivered his promissory
note for that amount, in consideration of the transfer of
property of the value of $435, the good will of the business,
and "B's" contract that he would work for a certain time
for a certain sum. In the case just supposed, "B" has re-
ceived his part of the consideration, and would be held to
full performance, if alive. His estate succeeding to his in-
terest in all that "A" had rendered unto him, we think it
should be held to answer; for there has been a partial failure
of consideration.

In the case of *Robinson v. Davison,* the leading case upon
respondent's theory, one party had employed the other to

play the piano at an entertainment to be given at a future time. Sickness intervened, and the contract was not performed. The court held that an action for damages would not lie; that where one was employed because of peculiar skill or attainment, there was, in the absence of an express agreement, an implied condition that he would be physically able or alive at the time set for performance. The rule is otherwise where the price has been advanced in consideration of the promise to render the service and a suit brought for its recovery. In such case the party, if alive, would be bound to return the unearned consideration; then why not his estate, if he be dead? An estate is liable on all contracts of the decedent which were broken in his lifetime, and, except those contracts whose performance require personal skill and taste, on all those that are broken after his death.

"An executor or administrator is liable, in general, to the extent of the assets which come to his hands to be administered, upon all the contracts of the deceased remaining undischarged at his death. Accordingly, the executor or administrator is liable, so far as he has assets, for debts of every description due from the deceased, either debts of record, as judgments, statutes, or recognizances; or debts due on special contract, as for rent or on bonds, covenants or the like under seal; or debts on simple contracts, as notes unsealed, and promises not in writing either expressed or implied." Chitty, Contracts (11th Am. ed.), p. 1406.

See, also, 3 Williams, Executors (7th Am. ed.), p. *1593; 2 Woerner, American Law of Administration, § 328.

In the case before us the consideration for the $800 in money and the $900 note is made up of three parts; $435 worth of office furnishings, an agreement not to engage in business in Everett within five years, and a contract for six months' service. The first two of these are concluded, the one by the transfer and the other by the death of the promisor. But appellant is entitled to show as a defense, if it be a fact, that the contract he had with Mendenhall was

a more favorable contract than he could have made with another equally skilled and competent. If so, the difference would be the measure of damages, and he can counterclaim it against the $900 obligation which he has admitted in his pleadings. If he could have made as favorable a contract with another there would be no damage.

During the four weeks Mendenhall worked in the office he earned $488.50. Of this appellant was entitled to $244.25, of which $70 has been paid. The court below held that the balance due could not be pleaded in defense of respondent's cause of action, it not appearing that the claim had ever been presented to the administrator for allowance or rejection. In this the court erred. Under Pierce's Code, § 1093, in an action brought by an executor or administrator, a demand against the estate may be offset to the extent of plaintiff's recovery without presentation, under Pierce's Code, § 2531 (Bal. Code, § 6226). While there is a divided authority, and in the absence of a statute the holding of the lower court is sustained by the greater number, it was held in *Fishburne v. Merchants' Bank of Port Townsend*, 42 Wash. 473, 85 Pac. 38, in accordance with the better reason, that the section of the statute above referred to expressly authorizes a set-off or counterclaim in an action brought by an executor or administrator.

The judgment of the lower court is reversed for further proceedings in accordance with this opinion.

RUDKIN, C. J., GOSE, DUNBAR, MOUNT, and FULLERTON, JJ., concur.