Maurice H. ROTH, t/a Bette-Maurice Hairstylists, Appellant,

v.

Otto Siegfried SPECK, a/k/a Siegfried Otto Speck, Appellee.

No. 1868.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 10, 1956.

Decided Oct. 23, 1956.

Joseph D. Gelb, Washington, D. C., for appellant.

No appearance for appellee.

Before HOOD and QUINN, Associate Judges; and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

QUINN, Associate Judge.

This suit was brought by plaintiff (employer) against defendant (employee) for breach of a written contract of employment. Trial by the court resulted in a finding and judgment for plaintiff for one dollar. Plaintiff appeals.

Plaintiff testified that he was the owner of a beauty salon in Silver Spring, Maryland; that his business was seasonal; and that on April 15, 1955, by a written contract he agreed to employ defendant as a hairdresser for one year. Defendant's salary was to be $75 a week or a commission of fifty percent on the gross receipts from his work, whichever sum was greater. Defendant remained in his employ for approximately six and one-half months and then left. Plaintiff testified that from the beginning defendant earned his salary, needed no special training, and soon built

up and maintained a following because of his exceptional skill and talent.

Plaintiff also testified that his net profit was seven percent of the gross receipts per hairdresser. To substantiate this he introduced defendant's statement of earnings, which reflected gross receipts and salary paid to him. Plaintiff testified that in an effort to mitigate his damages he employed another person "to whom he paid $350, which was a complete loss and he had to let this employee go." He then hired still another operator who even at the date of trial was not earning his salary, and was thus employed at a loss to plaintiff. A witness for plaintiff testified that he had been the owner of a beauty salon for many years; that defendant had been in his employ since November 1, 1955, at a weekly salary of $100; and that defendant was a very good operator.

Defendant testified that he left because conditions in plaintiff's shop were unbearable; that he complained to plaintiff on numerous occasions; that he had asked for more money but that salary was not the main reason for his leaving; and that he was presently earning $100 per week.

■ The sole question presented is what damages plaintiff was entitled to under these circumstances. Plaintiff argues that the trial court did not consider the value of defendant's services, or the profits lost by plaintiff and therefore erroneously limited the award to nominal damages. It is established law that where a plaintiff proves a breach of a contractual duty he is entitled to damages; however, when he offers no proof of actual damages or the proof is vague and speculative, he is entitled to no more than nominal damages.[1] While the facts warrant application of this principle to plaintiff's claim concerning lost profits, we think there was proof of actual damage and that the evidence with regard to the value of defendant's services provided an accurate measure of such damage.

■ The measure of damages for breach of an employment contract by an employee is the cost of obtaining other service equivalent to that promised and not performed.[2] Compensation for additional consequential injury may be recovered if at the time the contract was made the employee had reason to foresee that such injury would result from his breach.[3] However, we need not concern ourselves with the foreseeability of lost profits resulting from defendant's breach since plaintiff's proof on this point was at most conjectural and speculative. He introduced defendant's statement of earnings, which reflected gross receipts and salary paid to defendant, and testified that his net profit was seven percent of such gross receipts per hairdresser. However, he also testified that his business was seasonal. The matter was further complicated by the testimony of both plaintiff and defendant to the effect that an employee assigned the customers and that some customers requested a particular operator. It can be seen then that defendant's gross receipts, and hence plaintiff's seven percent profit, depended on a number of contingencies—the seasonal fluctuations of business, defendant's skill and industry, and

1. Seidenberg v. Burka, D.C.Mun.App., 106 A.2d 499; Morrissette v. Boiseau, D.C.Mun.App., 91 A.2d 130; see also Corbin on Contracts, Vol. 5, § 1001; Williston on Contracts, Vol. 5, § 1339 A (Rev. Ed.).

2. Cahalan Inv. Co. v. Yakima Central Heating Co., 113 Wash. 70, 193 P. 210; Mendenhall v. Davis, 52 Wash. 169, 100 P. 336, 21 L.R.A.,N.S., 914; Cannon Coal Co. v. Taggart, 1 Colo.App. 60, 27 P. 238; Norwood v. Carter, 242 N.C. 152, 87 S.E.2d 2; Silbert v. Katz, Sup., 151 N.Y.S. 510; Marcus v. Liner, 85 Misc. 368, 147 N.Y.S. 458; Myers Royal Spice Co. v. Griswold, 77 Neb. 487, 109 N.W. 736; see also Corbin on Contracts, Vol. 5, § 1096.

3. Corbin on Contracts, Vol. 5, § 1096; Williston on Contracts, Vol. 5, § 1362 A (Rev. Ed.); Steelduct Co. v. Henger-Seltzer Co., 26 Cal.2d 634, 160 P.2d 804; Marcus v. Liner, supra.

the judgment of the employee who assigned the operators. There was no criterion by which the trial court could have estimated plaintiff's profits with the degree of certainty necessary to allow their recovery; therefore they were not within the range of recoverable damages.[4]

There remains the question as to the value of defendant's services. Defendant was evidently a hairdresser of exceptional talent. This is demonstrated not only by the fact that he experienced no difficulty in securing and retaining another position at a higher salary, but also by plaintiff's own testimony that he was unable to hire a satisfactory substitute. Defendant did not claim that he was required to render services other than those in his original contract with plaintiff in order to obtain a higher salary from his new employer, nor did plaintiff prove by expert testimony how much such services would bring in the market. But plaintiff did prove the amount defendant actually received. Under such circumstances, there was some evidence of the value of defendant's services and therefore of the cost of replacement. As was said in Triangle Waist Co. v. Todd, 223 N.Y. 27, 119 N.E. 85, 86:

> " * * * If one agrees to sell something to another, and then, the next day, sells it to someone else at an advance, the new transaction is not to be ignored in estimating the buyer's loss. * * * The rule is not different when one sells one's labor. The price received upon a genuine sale either of property or of service is some evidence of value. * * * "[5]

Twenty-four weeks yet remained when defendant abandoned his contract and obtained employment elsewhere at a higher salary. Until this new compensation is disproved as the value of his services, it may be presumed to be the fair value. That it was the fair value of defendant's services was partially supported by plaintiff's unsuccessful efforts to obtain a comparable replacement. Seemingly, plaintiff would have had to pay $100 a week in order to obtain an equally talented hairdresser, if one could have been found. If this be so, plaintiff having contracted for defendant's services at a guaranteed wage of $75 per week, would be entitled to the difference between the two salaries for the remainder of the contract period. The fact that defendant was entitled to a fifty-percent commission on his gross receipts—if such receipts were more than his salary—should not be a deterrent to the application of this measure of damages. It was defendant's duty to prove facts in mitigation of the damage he caused by his breach.[6] If he believed his damages would be lessened by proving that if he had stayed for the remainder of his contract the fifty-percent commission on his gross receipts would have been higher than his guaranteed salary, it was his burden to offer such proof. Though such facts may be difficult to prove, one who breaches his contract " 'cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of,' or method of proving, damages." [7]

The judgment will be reversed with instructions to grant a new trial, limited to the issue of damages.

Reversed with instructions.

4. See generally as to recovery of profits: Lambert v. Jefferson, 34 Ala.App. 67, 36 So.2d 583, reversed on other grounds, 251 Ala. 5, 36 So.2d 594; Haskell v. Osborn, 33 App.Div. 127, 53 N.Y.S. 361; Washington & Georgetown Railroad Company v. American Car Company, 5 App. D.C. 524.

5. See also Phoenix Auto & Raincoat Co. v. Joseph, 122 Misc. 465, 203 N.Y.S. 79.

6. Hemminger v. Scott, D.C.Mun.App., 111 A.2d 619; Steelduct Co. v. Henger-Seltzer Co., supra; Vitagraph v. Liberty Theatres Co., 197 Cal. 694, 242 P. 709; see also Sedgwick on Damages, Vol. 1, § 227 (9th Ed.).

7. Steelduct Co. v. Henger-Seltzer Co., supra, 160 P.2d at page 814.