[No. 32038. Department One. September 12, 1952.]

WILLIAM J. JONES et al., *Appellants,* v. J. C. BRISBIN et al., *Respondents.*[1]

[1]Reported in 247 P. (2d) 891.

*Bell, McNeil & Bowles,* for appellants.

*Boynton Kamb,* for respondents.

WEAVER, J.—This is an action for services rendered by plaintiffs as architects. From a judgment of one dollar in their favor, plaintiffs have appealed.

Respondents, residents of Burlington, Washington, consulted appellants, architects in Seattle, in their professional capacity. Respondents testified they were in appellants' office three or four times and that they consulted several times with appellant Jones in Burlington. Their negotiations took place over a three-month period. On May 22, 1950, appellants delivered to respondents five sets of complete architectural blueprints and an eleven-page pamphlet of specifications for the construction of a store and shop building for respondents' electrical business. Appellants delivered one set of plans and specifications to the city building supervisor in Burlington. When the plans and specifications were delivered, respondent Brisbin testified:

"I am not sure what I said, but I know *I was very much concerned about what he was going to charge us for it* because I knew it was going to be money—I suspected it was going to be—and I said, 'What is all this going to cost?' and he said 'Well, it is going to be reasonable. I will send you a bill.' " (Italics ours.)

Respondents accepted the plans and specifications, never offered nor attempted to return them, and shortly thereafter submitted them to an employee of a contractor for an estimate on the cost of construction. Two expected sources of a building loan failed to materialize; the building was never built.

Prior to consulting appellants, respondents had a plan for their building drawn by an employee of a lumber company. The proposed building was to be immediately adja-

cent to the Vandeman Building in Burlington. Mr. Norris, who was then interested in financing the construction, suggested that respondents might save three or four hundred dollars if they could make a party wall out of the west wall of the Vandeman building, and thus eliminate building an east wall for the proposed structure. This was contrary to the Burlington building code. Respondent Brisbin testified that "it was Mr. Norris' opinion that a competent architect could convince the authorities in Burlington it wouldn't be necessary." Mr. Norris suggested respondents consult appellants for this purpose. When asked what he requested appellant Jones to do for him, respondent Brisbin testified:

"To see if we could get permission to construct the building by eliminating the fourth wall, to go in on a joint ownership with Vandeman on the fourth wall."

We accept this as the *original* purpose of the initial meeting of the parties. Throughout the negotiations, respondents maintain this purpose remained the same and that they did not employ appellants to do the work culminating in the complete plans and specifications later delivered.

In general, the trial court agreed with respondents and found that the employment of appellants was a limited one. Based upon this theory, the trial court specifically found that:

". . . The Plaintiff did give to Defendants suggestions as to the construction of said fourth wall, and in addition thereto made suggestions for a specially designed front for said proposed building. That during the trial of said cause, no evidence was introduced as to the reasonable value of services rendered by the Plaintiffs to the Defendants."

Accordingly, judgment was entered for plaintiffs (appellants) in the sum of one dollar.

After a study of the record, we cannot agree with the trial court in its conclusion that there was not a contract between the parties for the preparation of complete plans and specifications for the proposed building. The evidence discloses that the original purpose of the initial meeting was expanded by agreement of the parties and that the subsequent conduct of the parties resulted in a contract

between them. Our conclusion is based upon the following considerations:

First, the trial court found that appellants did give respondents suggestions as to the construction of the fourth wall. These "suggestions" are quite tangible and substantial. They are embodied in the structural detail on page one of appellants' exhibit No. 2. This exhibit consists of four large and complete pages of architectural blue prints for the erection of the proposed building.

Second, keeping in mind that the original contact was made for the purpose of having appellants convince the Burlington authorities that the fourth wall was unnecessary, subsequent conferences, and the subject matter discussed by the parties, lead to the conclusion that the original purpose was both modified and expanded.

Third, the trial court found that appellants did give respondents suggestions for a specially designed front for the proposed building. These "suggestions" are also quite tangible and substantial. Detailed plans for the store front appear on three of the four pages of exhibit No. 2.

Fourth, appellants' exhibit No. 4 is enlightening. It is a complete positive print of the proposed building. It contains front, rear, and side elevations; as well as a floor plan showing a sales area, sales office, model kitchen, electrical shop, shop office, boiler room, and launderette. It is not disputed that the parties went over this plan together. It abounds with penciled changes. A few of the changes are in the handwriting of Mrs. Brisbin, one of the respondents. If respondents thought, at this point in their negotiations, that appellants were only considering an attempt to talk the Burlington authorities into waiving the necessity of the east wall of the building, and perhaps, changing the design of the store front, this exhibit and the conference concerning it should have dispelled any such thought. Respondents' contention, and the trial court's finding, render this exhibit meaningless. We do not consider it so.

Fifth, respondents planned a model kitchen in the sales area in order to demonstrate electric kitchen appliances. At one of their meetings, Mrs. Brisbin gave to appellant Jones

a twelve-page calendar published by a manufacturer of household electrical equipment, each page of which has a picture of a model kitchen. Appellants' exhibit No. 2 provides for a model kitchen display. We note that page four of the plans contains construction detail of a counter and screen exactly as it appears on the November 1950 calendar, the page marked as an exhibit.

Sixth, Mrs. Brisbin identified plaintiffs' exhibit No. 7, a piece of yellow letter-size paper, as one of her drawings. It is a rough sketch, mostly freehand, of the back half of the proposed building. It has some arrangement detail for a launderette. Mrs. Brisbin gave the drawing to appellant Jones. The complete installation detail for a launderette, substantially as sketched by Mrs. Brisbin, appears in the final plans drawn by appellants.

Referring to the calendar and the sketch, Mrs. Brisbin was asked:

"Q. What was the object in giving Mr. Jones these things if you didn't expect him to do anything with these things?"

Her only explanation was:

"A. Well, Mr. Jones can be a very friendly, nice man, and he was interested in what kind of building we are going to have, and what kind of things were going in it, and when he would come I would show him, and he said, 'Oh, are you going to have this?' and I said, 'Yes.' and we never told him ever to put those in when we saw him. . . . We thought he was friendly and we didn't think he was leading up to the armful of plans and specifications. We thought he was making these suggestions friendly."

Seventh, respondents admitted that they had consulted a salesman representing a manufacturer of laundry equipment. Mrs. Brisbin had no recollection of ever asking the salesman to consult appellants, although he did so.

At their first meeting, appellant Jones offered to determine whether the east wall of the building could be eliminated, and to aid in securing a building permit. The documentary evidence is conclusive that their later negotiations went further. Respondents were, in fact, most helpful in imparting useful information which could lead to but

one result: complete plans and specifications for the proposed building. They sat mute while appellants made the suggested changes. They tacitly approved and actively accepted the architects' labors.

Where a person, with reasonable opportunity to reject offered services, takes the benefit of them under circumstances which would indicate, to a reasonable man, that they were offered with the expectation of compensation, a contract, complete with mutual assent, results. 1 Restatement, Contracts § 72 (1) (a).

It appears from the evidence that $675 is reasonable compensation for the plans and specifications prepared by appellants for respondents. For this they are entitled to recover. *Bebb v. Jordan,* 111 Wash. 73, 189 Pac. 553, 9 A. L. R. 1035.

The judgment is reversed, with directions to enter judgment for plaintiffs (appellants) in the sum of $675.

SCHWELLENBACH, C. J., MALLERY, GRADY, and DONWORTH, JJ., concur.