**TEXAS DELTA UPSILON FOUNDATION,**
Appellant,

v.

**Arthur FEHR & Charles Granger, d/b/a Fehr & Granger, Appellees.**

No. 10506.

Court of Civil Appeals of Texas.
Austin.

Oct. 30, 1957.

Rehearing Denied Nov. 20, 1957.

Dibrell, Gardner & Dotson, San Antonio, for appellant.

Clifford L. Whitehill, Graves, Dougherty & Gee, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from a judgment rendered in the District Court based on jury findings in favor of plaintiffs, appellees herein, against defendant, appellant herein.

The suit was founded on a written contract, denominated as "The Standard Form of Agreement between Owner and Architect." The contract provided in substance for the services of the appellees as defined by Paragraph 1 of the agreement, fully set out in the pleadings, to design the architectural structure of a proposed Chapter House for the Delta Upsilon Fraternity, to be erected in Austin, Texas, and for a method of payment.

In the alternative appellees sought to recover for the just and reasonable value of their services rendered and performed.

Recovery was sought for the sum of $8,400 and for attorney's fees in the sum of $2,500.

Defendant, appellant herein, denied liability on the contract; filed its several exceptions to appellees' pleadings, and denied that on May 14, 1955, it gave appellees in-

structions or authority to proceed to prepare specifications and working drawings for the proposed Chapter House.

Appellant admitted the execution of the written contract, but that appellees were advised and well knew and understood that appellant was depending upon voluntary contributions from various persons for a major part of the funds with which to construct such building, and that if sufficient funds were not raised, appellant would not be able to construct the building and that appellant was advised that the directors of the fraternity did not have in mind a building that cost more than $160,-000; that it was definitely understood that the contract would not be binding until preliminary studies had been approved by the directors, and that if the plans were not so approved there would be no obligation on the appellant to pay for plans and specifications; that no preliminary studies or other plans and specifications have been presented such as to meet the approval of appellant and its directors, and a failure of consideration.

On a trial before a jury and in response to issues submitted, the jury found in favor of appellees for $3,500 as the reasonable value of appellees' services from March 25, 1955 to May 14, 1955; and for $4,200 for services rendered from May 14, 1955 to October 14, 1955; and fixed reasonable attorneys' fees at $2,500. On these findings the Court rendered judgment for appellees and against appellant for $7,700 and $2,500 as reasonable attorney's fees, together with costs and interest.

The appeal is before this Court on 39 Assignments of Error and are to the effect that the Court erred in overruling defendant's motion for judgment notwithstanding the verdict of the jury; because there was no legal competent evidence in the record authorizing the submission to the jury of Special Issue No. 3 of the Court's charge; that the answer of the jury to Special Issue No. 3 is without any evidence to support same; that there is no evidence

to support the answer of the jury to Special Issue No. 3a; that the answer of the jury to Special Issues 1 and 2 are immaterial and cannot be the basis of a judgment for the reason that the contract sued upon provided that the compensation to plaintiffs was to be seven per cent of the cost of the finished building; that there is no competent legal evidence in the record authorizing the submission of Special Issue No. 1; that there is no competent evidence to support the finding of the jury in answer to Special Issue No. 1; that there is no competent legal evidence in the record authorizing the submission to the jury of Special Issue No. 2; that the answer of the jury to Special Issue No. 2 is without any evidence to support same; that there was no legal and competent evidence in the record to support the answer of the jury to Special Issue No. 5; that the suit being based upon a written contract that did not provide for attorneys' fees, there is no law authorizing a judgment on behalf of the plaintiffs for attorneys' fees in the sum of $2,500 as found by the jury in response to Special Issue No. 5; that it was established by the uncontradicted evidence that the plaintiffs failed to perform their contract in that they failed to prepare plans and specifications of a building in the architectural style desired by the defendant; that the undisputed evidence in this case establishes the fact that the plaintiffs failed to prepare plans for a building coming within the price or cost authorized by the defendant and that the plaintiffs failed to perform their contract; that it is established by the uncontradicted evidence in this case as a matter of law that the consideration for the written contract sued upon has failed in that the plans or specifications or other work done by the plaintiffs were not approved by the defendant and plaintiffs are not entitled to recover anything on such written contract; that there is no evidence in the record of any oral contract entered into by the defendant to pay the plaintiffs the reasonable value of their services in trying to prepare plans and specifications for the building involved in this suit; that there is no competent

legal evidence in the record that the conduct of the members of the defendant's Building Committee on May 14, 1955, and immediately following thereafter reasonably caused the plaintiffs to believe that they were authorized by the Building Committee to continue work on the plans, and the answer of the jury to Special Issue No. 3; that the answers of the jury to the special issues submitted are not sufficient to support a judgment against the defendant and in favor of the plaintiffs for any sum; that there was no competent evidence showing a legal obligation on the part of the defendant to pay an attorneys' fee; that it error for the Court to overrule the special exception to Paragraph VIII of plaintiff's First Amended Original Petition and special exception to Paragraph VII of plaintiffs' Second Amended Original Petition; that the Court erred in rendering judgment that the plaintiffs recover of defendant $7,700 as the reasonable value of architectural services, because there was no evidence authorizing such rendition; that there was no legal evidence to support the jury's finding as to $4,200; that the verdict of the jury in answer to the special issues and the facts established in the evidence as a matter of law are not sufficient to authorize a judgment for $7,-700.

The issues submitted are:

"Special Issue No. 1: What sum of money, if any, do you find from a preponderance of the evidence was the reasonable value of the architectural services rendered to defendant by the plaintiffs from March 25, 1955, to May 14, 1955?

"Answer in dollars and cents, if any.

"Answer: $3500.00.

"Special Issue No. 2: What sum of money, if any, do you find from a preponderance of the evidence would be the reasonable value of the architectural services rendered to defendant by the

plaintiffs from May 14, 1955 to October 14, 1955?

"Answer in dollars and cents, if any.

"Answer: $4200.00.

"Special Issue No. 3: Do you find from a preponderance of the evidence that the conduct of the members of the Defendant's Building Committee on May 14, 1955, and immediately following thereafter, reasonably caused plaintiffs to believe that they were authorized by the Building Committee to continue work on the plans?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"If you have answered 'Yes' to Special Issue No. 3 you will answer this question; otherwise, you need not answer it.

"Special Issue No. 3A: Do you find from a preponderance of the evidence that plaintiffs did continue work on the plans after May 14, 1955 in reliance on such belief, if any?

"Answer 'Yes' or 'No.'

"Answer: Yes.

"Special Issue No. 4: Do you find from a preponderance of the evidence that the acts and conduct of the plaintiffs on May 14, 1955, and within a reasonable time thereafter, caused the defendant to believe that no further work would be done on the plans until a cost estimate was furnished?

"Answer 'Yes' or 'No.'

"Answer: No.

"Special Issue No. 5. What sum of money, if any, do you find from a preponderance of the evidence would be the reasonable value of the services rendered plaintiffs by their attorneys in this case?

"Answer in dollars and cents, if any.

"Answer: $2500.00."

The question presented in the main concerns the sufficiency of the evidence in the record that plaintiffs relied on the conduct of the Building Committee in doing the work as inquired about in the special issue and entitled to recover the reasonable value of their services plus attorneys' fees, for the preparation of preliminary studies and partially completed working drawings, as set out in the pleadings.

We will consider the evidence as reflected by the record as best we can, but the record is long and we cannot recite all of the testimony.

The provisions relevant to this matter set out in the contract are as follows:

"* * * whereas the Owner intends to erect a chapter house for Texas Delta Upsilon Foundation, hereinafter called the Work,

"Now, therefore, the Owner and the Architect, for the consideration hereinafter named, agree as follows:

"The architect agrees to perform, for the above-named Work, professional services as hereinafter set forth.

"The Owner agrees to pay the Architect for such services a fee of seven per cent of the cost of the Work, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter called the Basic Rate.

"The parties hereto further agree to the following conditions:

"1. The Architect's Services.—The Architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical, and other mechanical work; assistance in the drafting of forms of proposals and contracts; the issuance of certificates of payment; the keeping of accounts, the general admission of the business and supervision of the Work.

"* * *

"4. Extra Services and Special Cases.—If the Architect is caused extra drafting or other expense due to changes ordered by the Owner, or due to the delinquency or insolvency of the Owner or Contractor, or as a result of damage by fire, he shall be equitably paid for such extra expense and the services involved.

* * *

"If any work designed or specified by the Architect is abandoned or suspended, in whole or in part, the Architect is to be paid for the service rendered on account of it.

"5. Payments.—Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 4:

"Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working drawings monthly payments aggregating at the completion thereof a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids."

Charles Granger, one of the plaintiffs, testified that the first contact he had with the fraternity was in February, 1955, through Mr. Gerald Stark, when a group of men came to his office to interview him as possible architects for the proposed Chapter House of Delta Upsilon Foundation, and that he was questioned as to jobs done by his firm; that about ten days

later he was notified that his firm had been selected as architects by Mr. Stark orally and by letter from W. S. Day dated February 21, 1955.

This letter in part reads:

" * * * this is to advise you that we are not considering the association of another architect with your firm in connection with the building of the D. U. Chapter House."

The letter then gives instructions as to preparation of preliminary sketches and as to the approximate size of the proposed building and as to an estimated cost, etc.

Mr. Granger further testified that on March 9th and again on April 4th, Mr. Homer Jackson, whom, Mr. Day had said, should be contacted, met with him to establish the problems and requirements of the house.

That dates were set for a meeting of the Building Committee and that Mr. Stark and Mr. Jackson came to the office on March 9th and discussed the general requirements of the building, and on April 18th a meeting of the Building Committee, composed of Mr. Day, Dr. Clark, Mr. Jergins, Mr. Stark and Mr. Jackson, was held and that the preliminary plans were presented of the building and an estimated cost of $198,000 was given.

On April 27th a revised set of floor plans was mailed to each member of the Building Committee.

The witness testified further that on May 14, 1955, a meeting of the Building Committee was held at the Perry Hotel; that Mr. Day, Dr. Clark, Mr. Jergins, Mr. Stark, Mr. Homer Jackson, as well as the witness and another member from his office were present, and he presented a revised set of preliminary studies with a scale model on the site. That members of the Committee made suggestions as to possible changes and lowered cost.

The witness further testified that when he was excused it was his understanding that his firm was to proceed with the plans and to make every effort to have them ready for early completion; that such plans were nearly completed and gave a detailed account of the progressive development of such plans.

The witness further testified that another meeting was held in September and a discussion was had and an estimated cost of $215,000 given; that Dr. Clark objected to the style of architecture; that plans were left with Mr. Day; that Dr. Clark stated that $160,000 was all the Foundation should or could spend; that he was not instructed by the Committee at the May meeting to cease work on the drawings; that after the September 17th meeting a letter was written to Mr. Day asking confirmation of the fact that working drawings had been authorized at the May meeting; that no reply was had; that on September 21st Mr. Granger and Mr. Crume of his office, went to Houston and saw Mr. Sawtelle, who gave them a line drawing of a plan he had, which Mr. Sawtelle thought would fit the lot and satisfy the Committee and could be built for $160,000; that on October 14th a report was sent to Mr. Sawtelle with certain diagrams and a copy was sent to Mr. Stark and Mr. Day; that nothing further was heard from the Committee.

Testimony was given by the witness as to the elements that go into determining the architectural fee to be charged on a project of this kind.

On February 8, 1956, Mr. Day wrote Mr. Granger that he was sorry that an understanding regarding the fee on the Fraternity House could not be had and that his services were no longer desired and, as Chairman of the Building Committee, desired to make such termination official.

Formal demand was made on the Foundation by the architect for payment of the sum of $7,200 and attorneys' fees.

Evidence was had as to the reasonableness of the attorneys' fees and as to the usual architect's fees.

Appellants offered the testimony of Mr. Day, Chairman of the Directors of the Foundation and of the Building Committee, who testified concerning the hiring of an architect and the selection of Mr. Granger as architect, and as to plans submitted, and objected to them, particularly as to the outside appearance; that the cost be kept to $168,000, and as to conversations at a meeting in May, and that the plans as presented by Mr. Granger were not approved; that Mr. Granger sent the Committee a bill for $3,500 for preliminary work; that no instructions or approval was ever given Mr. Granger to begin actual plans and specifications on any building; that the very last instructions given to Mr. Granger was at the May 14, 1955 meeting and was that the cost was getting out of hand and that a detailed cost estimate was essential; that Mr. Granger said such would be furnished in about two weeks and that such was never furnished; that the Committee had employed another architect who had submitted plans and specifications which had been approved and that the estimated cost was $165,000.

The witness testified that Mr. Granger had been discharged because he could not cooperate with the Building Committee and had antagonized Dr. Clark.

Mr. Stark testified that the Committee never approved the preliminary drawings of Mr. Granger and never instructed Mr. Granger to commence the preparation of working drawings for a building; that the architect was never told to not prepare working drawings; that Mr. Granger was told that $200,000 could not be raised; that Mr. Granger's services were terminated because of a reluctance apparently to modify his plans in any way that would suit the approval of the Committee.

Mr. George Sawtelle testified that he was a member of the Building Committee and that he was not present at either the meeting of the Committee on April 18th or May 14th, but attended the meeting of the Committee on September 17, 1955, at which time he first met Mr. Granger and saw plans and specifications for a Chapter House and heard Mr. Granger say "I may have stuck my neck out on this thing in not getting the approval of the Committee", and he then explained the plans and asked for questions. Certain questions were asked, one was as to the location of the kitchen and observed that the Chapter was spending too much for walls around the house; that other questions were asked and Mr. Granger left; that Dr. Clark was very angry, was critical of the Committee and of Mr. Granger; that later Mr. Granger went to Houston and discussed with the witness about making certain changes and Mr. Granger agreed to work out some plans and present them to the witness in ten days; that after twenty-one days a call was made to Mr. Granger who said he would get the plans off that day; that the plans were later received.

There was other testimony offered by the defendants but we do not believe a recitation of such will be of material assistance, since the testimony above discussed is of similar import.

It is conceded that the contract obligated the architects to prepare plans for a proposed Chapter House and the appellant to pay for such services.

Mr. Day testified:

"We [defendant] hired Mr. Granger to design a house for us and signed a contract for that purpose."

In a letter dated February 21, 1955, by Mr. Day it was stated that no consideration was given to associating another architect, but that the project be completed at the earliest possible date.

Granger testified that it was his understanding that he had the obligation to proceed and prosecute the work with all diligence.

On January 23, 1956, Mr. Stark advised Mr. Granger that his firm was to be paid off for what it had done. On February 8, 1956, Mr. Day officially notified Mr. Granger that his services were no longer desired.

■ We believe that the Special Issues as submitted were appropriate and justified by the pleading and that the answers by the jury are reasonably supported by the evidence, and are not clearly wrong nor unconscionable.

Article 2226, Vernon's Ann.Civ.St., permits the recovery of reasonable attorneys' fees and the jury finding that the $2,500 which plaintiffs have agreed to pay is reasonable and is supported by the evidence.

■ We have herein set out portions of the contract providing for a method of payment and will not repeat such provision, but say that it was provided that if any work designed by the architect was abandoned in whole or in part, the architect was to be paid for his services so rendered.

Since the architects were discharged they were entitled to recover a reasonable sum for such work as had been performed.

■ According to the testimony of Mr. Granger the work was begun in February with the preliminary plans and with an approval in May of such, and on subsequent times, and that at no time was he told to cease work until in February, 1956, when he was finally discharged. We believe that plaintiffs have discharged the burden of proof and were entitled to recover the reasonable value of the services performed.

Llewellyn v. Board of Education, 324 Ill. 254, 154 N.E. 889; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660;. 5 Williston on Contracts, 4134, Sec. 1479 (rev.ed., 1937); Texas Associates v. Joe Bland Const. Co., Tex.Civ.App., 222 S.W.2d 413, er. ref., N.R.E.

It is inferable from the evidence and in the actions and conduct of the members of the Building Committee and their failure to notify plaintiffs that they had terminated the contract, that the plaintiffs were led to believe that they were authorized to act in the manner they did act.

17 Tex.Jur. 137, Sec. 9; Merrill on Notice, Notification, Sec. 526, p. 526.

■ The fact that plaintiffs were working under a contract would not prevent them from recovering under an implied contract or for a recovery on quantum meruit for the reasonable value of the services actually performed.

Johnson Aircrafts v. Eichholtz, Tex. Civ.App., 194 S.W.2d 815, er. ref., N.R.E.; Sterling v. Marshall, D.C.Mun.App.1947, 54 A.2d 353; Oliver L. Taetz, Inc., v. Groff, 363 Mo. 825, 253 S.W.2d 824.

■ We do not believe it was error for the Court to refuse to submit an issue as to the existence of an oral agreement that the total cost must not exceed a specified sum, because any finding by the jury would not, as a matter of law, have had any bearing upon the outcome of the case.

Mitterhausen v. South Wisconsin Conference Ass'n, etc., 245 Wis. 353, 14 N.W.2d 19.

In the letter dated February 21, 1955, written by Mr. Day to Mr. Granger, it is stated that the house desired was one to accommodate fifty men and that the cost be kept as low as possible, about $12 per square foot as a possible estimate, and no limit of $168,000 is placed on the total cost.

■ We conclude from the evidence as a whole that there was never any agreement that a cost limitation be placed on the proposed building, but only an approximation of such estimated cost.

It was at the September, 1955, meeting that cost became a controlling factor, but by this time most, if not all of the work, for which plaintiffs sued, had been done.

**132**

In Hall v. Parry, 55 Tex.Civ.App. 40, 118 S.W.2d 561, er. ref., it was held that unless the architect is given clear instructions with regard to maximum cost, it is not the architect's province to keep himself informed as to the financial ability of his client.

While the Committee had the right to terminate the contract, it was under the duty to inform the architects that their services were no longer desired, and until so advised it was the duty of the architects to continue the work.

Jones v. Brisbin, 1952, 41 Wash.2d 167, 247 P.2d 891.

The reasonableness of the architect's actions in continuing with the plans, viewed in the light of all the circumstances, have been resolved in their favor by the jury which saw the witnesses and heard the testimony, and such findings do not appear to be either clearly wrong or unconscionable, and we are not justified in disturbing them.

Quinn v. Wilkerson, Tex.Civ.App.1946, 195 S.W.2d 399, no writ.

We believe that the plaintiffs having made appropriate demand for payment for their services as architects, are entitled, under Article 2226, V.A.C.S., to reasonable attorneys' fees, and an issue as to the reasonableness of such attorneys' fees was proper, and the answer of the jury is reasonably supported by the testimony.

Craft v. Netherton, Tex.Civ.App., 276 S.W.2d 855, no writ, and cases cited therein.

We have carefully considered the rather large record in this case and the well prepared briefs as submitted, and do not find any reversible errors.

The judgment of the Trial Court is affirmed.