[No. 1113-1.    Division One—Panel 1.    February 26, 1973.]

HOWARD E. STARK, *Appellant*, v. MARION O. McCAW *et al.*,
*Respondents*.

*Schweppe, Doolittle, Krug, Tausend & Beierle* and *Fredric C. Tausend,* for appellant.

*Davis, Wright, Todd, Riese & Jones* and *Evan L. Schwab,* for respondents.

WILLIAMS, J.—Howard E. Stark sued the executors of the will of John E. McCaw, deceased, to recover upon a contract which he claims to have made with the decedent. Stark appeals from a judgment dismissing the action at the close of his case.

The trial court's findings of fact are not challenged. Essentially, the court found that Stark was a broker for the sale and purchase of television and radio stations with his principal place of business in New York. The following transactions took place between Stark and the decedent:

A letter signed by the decedent was mailed to Stark on July 31, 1962:

Anticipating future investments in broadcasting and

allied fields, I would like to enter arrangements to retain you at the rate of $10,000. a year as a consultant.

In order that you would be in a position to render services on a first priority basis, I would like to make this consulting arrangement on a basis of 15-years.

This consulting arrangement would be assignable by me to such corporation as I may designate and can be payable yearly in advance or monthly if you prefer.

Please indicate your acceptance below if this arrangement is satisfactory to you.

ACCEPTED BY:

/s/ Howard Stark

Howard Stark

As indicated, Stark signed his acceptance of the July 31 offer. He mailed it to the decedent on August 1, 1962, with the following covering letter:

I am enclosing signed copy of the consulting agreement between us.

It is understood that because of the priority of my services involved, that in the event of my death, the balance of payments due under this contract will continue to be made to my Estate or to my legal representatives. In the event of your death before the expiration of this contract, it is understood that my services will continue with the various enterprises involved and that payments will be made to me by your legal representatives. It is also understood that this contract is non-cancellable [*sic*] by either party prior to its expiration date.

It is understood that any expenses in connection with my services to you personally and/or your corporations will be borne solely by myself and you will not be responsible for any expenditures in this connection.

To facilitate bookkeeping details I would prefer the payments to be made to me on an annual basis commencing with the date of this contract.

On January 4, 1963, decedent sent Stark a check for $10,000. Then, on January 7, 1963, decedent wrote Stark as follows:

In accordance with my letter of July 31, 1962, I am sending a check for $10,000 for consulting services. This check was mailed January 4th and you should have already received it.

I will discuss with you any possible modifications in the consulting arrangement as suggested in your letter of August 1, 1962.

On January 10, 1963, Stark negotiated the check.

From these facts the court concluded that Stark's August 1 letter added new terms which were material and which could not be implied by law in McCaw's July 31st letter. Therefore, the court decided that Stark's letter was a counteroffer which McCaw did not accept. Further, the court held that any oral contract which Stark alleged had been made was barred by the statute of frauds because the contract was not performable within 1 year. The court also held that the delivery and acceptance of the $10,000 check and McCaw's letter of January 7, 1963, did not bring a contract into being.

We agree that an oral contract containing the terms claimed by Stark would be barred by the statute of frauds. We also agree that Stark's August 1 letter was a counteroffer because it proposed that the contract would be noncancelable by the actions or death of either party. We disagree, however, with the trial court's interpretation of the events of January, 1963, and determine that a contract was then formed between the parties. On January 4, McCaw sent Stark a check for $10,000. On January 7, McCaw wrote Stark informing him that the money for consulting services in accordance with the July 31 letter had been mailed and that the modifications suggested in his letter of August 1 would be discussed in the future. Although at this point there still was not a contract, these acts of McCaw did constitute an offer to Stark to proceed to perform pursuant to the July 31 writing. Stark's response was to accept and cash the check. By so doing, he accepted McCaw's offer because he was entitled to the money only if there was a contract. Stated in another way, Stark's acceptance of the check for $10,000 was an acceptance of McCaw's original offer with the conditions expressed in the August 1 letter to be discussed at a later date. *Bond v. Wiegardt*, 36 Wn.2d

41, 216 P.2d 196 (1950); *Autographic Register Co. v. Philip Hano Co.*, 198 F.2d 208 (1st Cir. 1952).

In arriving at this decision, we apply the rule stated in *Jones v. Brisbin,* 41 Wn.2d 167, 247 P.2d 891 (1952):

> Where a person, with reasonable opportunity to reject offered services, takes the benefit of them under circumstances which would indicate, to a reasonable man, that they were offered with the expectation of compensation, a contract, complete with mutual assent, results. 1 Restatement, Contracts § 72 (1) (a).

41 Wn.2d at 172.

It is true that in this case the compensation was paid for expected services, rather than the other way around. However, the principle is the same: if a person, with a reasonable opportunity to reject offered compensation, takes the benefit of it under circumstances which would indicate to a reasonable man that it was offered with the expectation of services, a contract, complete with mutual assent, results.

Stark did accept the check, and there is nothing in the record thus far to show that he was not ready to perform when called upon.

■ The executors contend that the letters do not define several material terms of the alleged contract, including whether it survives the death of either or both parties. The law is that a contract for personal services terminates upon the death of the person required to perform those services unless there is a provision in the agreement to extend payments beyond his death. *Mendenhall v. Davis*, 52 Wash. 169, 100 P. 336 (1909); Restatement of Contracts § 459 (1932). The contract extends beyond the death of McCaw, however, because he had the right to assign it and his performance was to be the payment of money. The contract did not call for his personal performance. *MacDonald v. O'Shea*, 58 Wash. 169, 108 P. 436 (1910); Restatement of Contracts § 459, Illustration 11 (1932). Although sketchy, the agreement formed does provide the essential terms of a retainer contract. For $10,000 a year, payable monthly or yearly, in advance, Stark is to render consulting services on

a first priority basis for 15 years to McCaw or to such corporation as he may designate.

The record does not disclose whether Stark has been ready to perform consulting services on a first priority basis,[1] because the trial was terminated at the close of Stark's case. The executors have not had an opportunity to present evidence upon this question as well as upon their other defenses.

The judgment is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion. Taxation of costs will abide the final determination of the case.

One other problem must be considered. The executors filed a counterclaim upon a promissory note alleged to have been signed by Stark in favor of McCaw. This counterclaim was dismissed with prejudice in the judgment of the trial court. As a cross-appeal was not taken, the judgment as to the counterclaim became final. CAROA 33(3); *Waagen v. Gerde*, 36 Wn.2d 563, 219 P.2d 595 (1950).

It is so ordered.

HOROWITZ, C.J., and CALLOW, J., concur.

Petition for rehearing denied May 17, 1973.

Review denied by Supreme Court July 24, 1973.

---

[1] If, indeed, it is necessary for him to do so. *See Palmer v. Clark*, 52 Wash. 345, 100 P. 749 (1909).