[No. 44716.   En Banc.   February 2, 1978.]

ROGER R. RUTCOSKY, ET AL, *Respondents,* v. HAROLD L. TRACY, ET AL, *Appellants.*

*Slade Gorton, Attorney General,* and *D. Roger Reed* and *John P. Giesa, Special Assistants,* for appellants.

*Sullivan, Morrow & Longfelder, Dan Sullivan, Kerry D. Kidman,* and *Albert Morrow,* for respondents.

BRACHTENBACH, J.—Plaintiffs were awarded substantial damages against Big Bend Community College (college). A review of the facts is a necessary predicate to an adequate discussion of the legal issues. In summary, plaintiff Roger R. Rutcosky developed a program proposal which in about 4 years generated $10 million in federal funds for the defendant college. The college would deny plaintiff any compensation for his efforts; the court, finding an express contract, upon conflicting evidence as to the basis upon which plaintiff developed his proposal, awarded plaintiff a percentage of the funds received by the college. We affirm

the judgment except for the award of prejudgment interest which we reverse.

Plaintiff was an instructor at the college for the 1970–71 year as a replacement for an instructor on sabbatical, therefore he did not expect a contract for the next year. Rather, he enrolled for graduate work at Washington State University to secure his doctorate. In July 1971, at a time when plaintiff was not a college employee, he asked the college president about the possible availabilities of research funds to develop a program to attract more local students to the college. The college president told plaintiff that no funds were available for such purposes, but showed plaintiff a letter from the United States Army soliciting proposals for development and operation of a predischarge educational program to assist servicemen to earn a high school diploma. (The program is referred to as PREP.) The proposal was for an Army division in Germany with potential enrollment of thousands of soldiers.

At the time of the meeting between plaintiff and the college president, no college employee was preparing a response to the PREP solicitation; in fact, the college probably would not have responded except for plaintiff's work. At this initial meeting no commitment was made by either party.

Plaintiff studied this proposal, did some preliminary research and then discussed the matter with the college president. There is conflict as to this key and controlling conversation. Only the plaintiff and the college president were present at the meeting. Both plaintiff and the president testified that plaintiff agreed to develop the proposal responding to the PREP solicitation. Both plaintiff and the president testified that plaintiff asked for, and the president promised, that plaintiff would be the dean of the PREP program. That promise was fulfilled. The critical point in which plaintiff and the president disagree is additional compensation claimed by plaintiff. Plaintiff testified that he asked for 30 percent of the revenue from the program and that the president said that if the program were

adopted the plaintiff would be taken care of. The president does not recall this conversation or alternatively denies any agreement regarding compensation.

Plaintiff, after additional research on his own time, prepared an 87–page proposal to develop and administer the PREP program. In September 1971, the college submitted plaintiff's unrevised proposal to the Army. On October 22, 1971, plaintiff filed a federal copyright on his proposal document. On October 28, the Army selected the college to implement a PREP program as outlined in plaintiff's proposal.

Within a few weeks, plaintiff assembled a staff, went to Germany and started the program. For reasons which are not involved in this suit, plaintiff later was lawfully discharged.

The PREP program has been successful. The college has been selected to provide PREP programs to several other branches of the armed services. In 4 years the college has received approximately $10 million from the program. The college has operated the program at a profit so that it has had PREP–generated funds available for other college spending.

The trial court awarded plaintiff 5 percent of the PREP revenues for the first 5 years of the program and 2 1/2 percent for the next 5 years.

■ The college attacks a number of the findings and conclusions. We need not extend this opinion with a discussion of the specifics. Two points suffice. First, based upon conflicting evidence, the court accepted the plaintiff's version of the existence of a contract. There is substantial evidence to support plaintiff's contention; therefore the trial court's finding is binding upon us. Second, was the failure of the parties to agree upon the exact amount of compensation fatal to plaintiff's recovery? Even by plaintiff's testimony the college president did not objectively manifest agreement with or accession to plaintiff's request for 30 percent of the revenues. The trial court found that

there was an agreement and understanding between plaintiff and the college that plaintiff would receive a percentage of the generated revenues if his proposal was accepted by the Army. There is substantial evidence to support that finding.

■ The general rule is that failure to agree upon the precise amount of compensation does not defeat the existence of a contract. In other words, once the *fact* of compensation is established, failure to agree upon the precise degree of compensation does not vitiate the performing party's right to reasonable compensation. *Jones v. Brisbin,* 41 Wn.2d 167, 247 P.2d 891 (1952); 1 S. Williston, *A Treatise on Law of Contracts* § 41, at 129 (3d ed. 1957). Consequently, a contract was formed although the exact amount of compensation was unspecified.

Having disposed of the college's contention that plaintiff is entitled to nothing, the question is the proper amount of compensation.

Once the agreement as to the fact of compensation was established, the trial court was entitled to invoke its equitable powers in determining a reasonable amount of compensation. It did so in 28 pages of carefully drawn findings of fact and conclusions of law.

The court had before it the fact that the program had expanded from one Army division into multiple Army installations, Air Force units, even to Navy ship programs. Yet the court recognized the diminishing influence of plaintiff since he had been lawfully discharged. Therefore, the court fashioned an equitable remedy of 5 percent of gross revenues for 5 years and 2 1/2 percent for an additional 5 years. Plaintiff's testimony was that he originally asked for 30 percent of the gross.

We will not substitute our judgment for that of the trial court, absent abuse of discretion. We find no such abuse, but rather a careful, thoughtful evaluation of the evidence and theories by a competent trial judge. We affirm the award.

Next, the college claims that the contract, if found to exist, is ultra vires. We do not reach the merits of this issue since it is an affirmative defense to be pleaded as required by CR 8(c). It was not so pleaded.

At best, ultra vires was raised for the first time on a motion for reconsideration. Even at that stage it was framed as a defense of illegality. The defense came too late; in any event, there was substantial evidence of knowledge and ratification by the Board of Trustees of the college.

■ Third, does the oral contract violate the statute of frauds? No. Full performance by one party removes a contract from that statute. *Becker v. Lagerquist Bros., Inc.,* 55 Wn.2d 425, 434, 348 P.2d 423 (1960). Plaintiff prepared the successful proposal and served as dean of the program until lawfully discharged. He fully performed and the statute is not applicable.

Fourth, the college contends that plaintiff's agreement is illegal as violative of 10 U.S.C. § 2306(b).[1] Its argument fails. 10 U.S.C. § 2306 references § 2304. That statute applies to procurement by the armed services. Here the contract specifically excluded any financial liability upon the Army. Rather, all compensation came from individual soldiers assigning certain Veterans Administration benefits directly to the college. The statute is not applicable to this agreement.

■ Fifth, the college argues that plaintiff forfeited any common–law rights to his proposal by obtaining a statutory copyright. It cites many cases but they all involve competition between common–law literary rights and statutory

---

[1] "Each contract negotiated under section 2304 of this title shall contain a warranty, determined to be suitable by the head of the agency, that the contractor has employed or retained no person or selling agency to solicit or obtain the contract under an understanding or agreement for a commission, percentage, brokerage, or contingent fee, except a bona fide employee or established commercial or selling agency maintained by him to obtain business. If a contractor breaks such a warranty the United States may annul the contract without liability or may deduct the commission, percentage, brokerage, or contingent fee from the contract price or consideration." 10 U.S.C. § 2306(b).

copyright remedies. No authority is cited for the proposition that filing a statutory copyright claim extinguishes a prior contractual agreement relating to the copyrighted material. We suspect that no such authority exists. It is recognized that a remedy for a breach of contract exists apart from any statutory remedies under the copyright statute. *Benelli v. Hopkins,* 197 Misc. 877, 95 N.Y.S.2d 668 (1950).

Finally, the college contends that the court erred in ordering it to "freeze" sufficient PREP funds to pay the ultimate judgment. Relying upon *Centralia College Educ. Ass'n v. Board of Trustees,* 82 Wn.2d 128, 508 P.2d 1357 (1973), the college argues that it is a state agency which can appeal, under RCW 4.92.030 and .080, without posting a supersedeas bond. We hold that the order is not the equivalent of requiring a supersedeas bond within the meaning of the statute. This is a unique case and our conclusion is buttressed by the fact that the legislature has mandated that the costs of PREP programs shall be borne by non-state treasury sources. RCW 28B.50.094. The theory behind the no supersedeas bond requirement for appeal by state agencies is that the state treasury is an adequate guaranty to the prevailing party. Here the plaintiff is arguably limited to PREP funds, although that specific issue is not before us. Equitable considerations demand that defendant make those funds available to satisfy his judgment.

The trial court did commit error in awarding prejudgment interest. There was no agreement on the amount of compensation; therefore, plaintiff's claim was unliquidated until the court established his amount of recovery. Prejudgment interest is recoverable only when the claim is liquidated. *Prier v. Refrigeration Eng'r Co.,* 74 Wn.2d 25, 442 P.2d 621 (1968).

We find appellants' other assignments of error to be without merit.

Plaintiff cross–appeals urging error in the reduction of royalties from 5 percent to 2 1/2 percent for the second 5 years of the award. No authority is cited but, in any event,

no error is present. The court fashioned an equitable remedy within its reasoned judgment and discretion. We will not substitute our opinion.

Judgment is affirmed, except as to the award of prejudgment interest, which is reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied June 9, 1978.