**D.N. CORPORATION, Appellant,**

v.

**Robert HAMMOND, Benjamin O. Walters, and Mark Rowland, Appellees.**

**No. 7031.**

Supreme Court of Alaska.

May 11, 1984.

W.G. Ruddy, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Jeffrey M. Feldman, Gilmore & Feldman, Anchorage, for appellees.

## OPINION

Before RABINOWITZ and MATTHEWS, JJ., DIMOND, Senior Justice,* and COOKE and TAYLOR, Superior Court Judges.**

RABINOWITZ, Justice.

### I.

This appeal from a grant of summary judgment involves the allocation among co-counsel of attorney's fees which accrued in the settlement of a wrongful death claim.[1] The superior court concluded that the fee distribution was in accordance with the lawyers' original agreement and with a court-approved settlement proposal in which all parties had acquiesced. We reverse and remand for further proceedings.

### II.

Donald Kaatz and Ronald Lindley were killed in an accident near Petersburg, Alaska in December 1970.[2] Representatives of the Kaatz estate retained Anchorage attorney Robert Hammond to prosecute its wrongful death claim. Hammond contacted William Ruddy, a member of the law firm of Robertson, Monagle, Eastaugh & Bradley (the Robertson firm), to arrange for joint representation of the Kaatz estate.[3] Ruddy agreed on behalf of the Rob-

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska.

** Cooke and Taylor, Superior Court Judges, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

1. The claim has twice been before this court. *See Kaatz v. State,* 540 P.2d 1037 (Alaska 1975); *State v. Kaatz,* 572 P.2d 775 (Alaska 1977).

2. *State v. Kaatz,* 540 P.2d 1037, 1041 (Alaska 1975).

3. The Robertson firm had previously been retained to represent the interests of Ronald Lindley in the wrongful death suit.

ertson firm to assume responsibility for the liability portion of the suit; Hammond was to continue to represent the Kaatz estate on the issue of damages. Hammond was to be entitled to one-third of the estate's "net recovery" (the total award less any amount due the subrogated workers' compensation carrier).[4] The Robertson firm, in turn, was to receive one-third of Hammond's fee as compensation for its assistance in prosecuting the case. Shortly thereafter, Kaatz's employer's workers' compensation carrier, which had paid approximately $60,000 in benefits to Kaatz's dependents, asked the Robertson firm to represent it. Under AS 23.30.015(g), the carrier was entitled to recover this sum from any third-party tort judgment won by the estate, "in so far as the recovery [was] sufficient after deducting all litigation costs and expenses." The firm accepted the offer of representation on a contingent fee basis. It was to receive one-third of any recovery obtained by the carrier.[5]

Hammond subsequently contacted attorneys Benjamin Walters and Mark Rowland and requested their assistance in handling the damages portion of the case. In return, each was to receive one-third of the remaining two-thirds of the fee. Thus, the distribution arrangement was as follows: the Kaatz estate was to receive two-thirds of the anticipated net recovery, the Robertson firm was to receive one-ninth of the net recovery and Hammond, Walters and Rowland were each to receive two-twenty-sevenths of the recovery. The workers' compensation carrier's subrogation rights represented the difference between the gross and net recoveries.

After a non-jury trial, the superior court found that negligence of the State had been the primary cause of the accident, but concluded that relief was barred by the doctrine of contributory negligence. *Kaatz I*, 540 P.2d at 1041. On appeal, the plaintiffs successfully urged adoption of the doctrine of comparative negligence. *Kaatz I*, 540 P.2d at 1049. The appeal was handled on behalf of the plaintiffs by the Robertson firm, as it exclusively involved issues of liability.

The case was remanded for a determination of the relative liability of the parties. Upon remand, the superior court made findings on liability and damages. The state appealed this decision. Ruddy contacted Rowland regarding their arrangements for handling the second appeal.[6] Rowland told Ruddy, ". . . go ahead and run the appeal, Bill, we'll settle up on it at the end."

The second appeal again resulted in reversal. *State v. Kaatz*, 572 P.2d 775 (Alaska 1977). The case was remanded to the superior court for a trial on damages. Shortly thereafter, the Kaatz estate settled the case for $1,000,000. A settlement and distribution plan prepared by Walters and approved by the probate court distributed the proceeds of the settlement as follows:

1. Reimbursement to workers' compensation carrier of $61,800.00, less $20,-600.00 as pro rata share of attorney's fees and less $262.12 as pro rata share of

---

4. On January 13, 1972, Hammond wrote Ruddy confirming the arrangement. The letter stated, in relevant part:

   . . . This letter will confirm our oral conversation by phone this date wherein you agreed to represent plaintiff in the referenced case on the issue of liability, and I will represent plaintiff in the case as concerns the question of damages.

   My fee arrangement with plaintiff is ⅓ contingent of the net recovery. For your work in this, you will receive one-third of my fees. It is understood that workmen's compensation subrogation is involved in this matter, and when computing attorney's fees, the total recovery upon which the fee is based will be adjusted downward to compensate for this. The exact amount of the adjustment will remain elastic, depending on future conversations between ourselves and the client. . . .

5. The fact that the Robertson firm was representing the workers' compensation carrier was not communicated to the administratrix of Kaatz' estate or to Hammond until after the case was settled.

6. Hammond had closed his office shortly after contracting out responsibility for the damages portion of the case to Walters and Rowland. He played no further part in the litigation until the fee distribution.

litigation expenses for a total of $39,937.88 [7]

2. Attorney's fees of $317,900.00 [8] pursuant to the contingent fee contract between the Kaatz estate and Hammond.

3. Reimbursement of litigation expenses totalling $5,837.88.

4. The remainder to the heirs of Kaatz.

Walters divided the contingent fee proceeds, allocating one-third to the Robertson firm and two-ninths each to Hammond, Rowland and Walters.[9]

Ruddy wrote to Walters objecting to the disbursement of attorneys' fees. He requested an additional $11,760.00 for work done in connection with the second appeal and claimed that he was entitled to the full $20,600.00 withheld from the workers' compensation carrier as its pro rata share of attorney's fees.[10] Walters disagreed, contending Ruddy was entitled to no additional compensation.

7. The benefits paid by the workers' compensation carrier to the Kaatz estate following the accident had totalled $61,800.00.

8. It is not clear from the record how the figure of $317,900.00 was computed. The actual sum which was ultimately divided among the attorneys was $331,300.00 or approximately one-third of the total settlement. *See infra* n. 9. The disparity between the two sums was not addressed by the parties.

9. The precise amounts disbursed to the claimants were as follows:

| | | |
|---|---|---|
| Gross Recovery | | $1,000,000.00 |
| Litigation Expenses: | | |
| William Ruddy | $3,900.00 | |
| Mark Rowland | 600.00 | |
| Benjamin Walters | 600.00 | |
| GSW&D | 1,000.00 | |
| Total Costs | | (6,100.00) |
| Net Recovery | | $ 993,900.00 |
| Less: Attorneys' Fees at 33⅓ percent | | |
| William Ruddy (⅓) | $110,433.33 | |
| Mark Rowland (²⁄₉) | 73,622.22 | |
| Benjamin Walters (²⁄₉) | 73,622.22 | |
| Robert Hammond (²⁄₉) | 73,622.22 | |
| Total Attorney's Fees | | (331,300.00) |

The Robertson firm [11] filed suit against Hammond, Rowland, and Walters, demanding the additional fees. Both parties moved for summary judgment. The superior court concluded that the Robertson firm's fee award was in accordance with the attorneys' original fee agreement, that the agreement had not been modified prior to the second appeal to increase Ruddy's [12] share of an attorney's fee award, and that recovery in quantum meruit was not available since the parties had entered into a formal contract. This appeal followed.

### III.

We first consider the question of whether the superior court erred in concluding that the attorney's fees withheld from the recovery of the workers' compensation carrier were properly allocated. The superior court found that Ruddy had acquiesced in the distribution of these fees and cannot now challenge the fact that all of them were not paid to him. We disagree. But

| | | |
|---|---|---|
| Net to all Beneficiaries | | $662,600.00 |
| Workmen's Compensation Subrogation | ($61,800.00) | |
| Less: Pro Rata Expenses | 376.98 | |
| Less: Pro Rata Attorney's Fees | 20,600.00 | |
| Net Payment to Compensation Carrier | | (40,823.02) |
| Net Available for Distribution to Estate | | $ 621,776.98 |

10. Originally, Ruddy claimed he was entitled to an additional $20,600.00. Later, he conceded that he had received a one-third portion of the $20,600.00 sum withheld from the carrier in the prior fee distribution. Thus, he requested that a judgment for the $13,732.00 balance be entered in his favor.

11. The D.N. ["Debtors' Nemesis"] Corporation, nominal plaintiff in this case, was created by the Robertson firm as a collection agent for its claims. D.N. is the assignee of the law firm's claims.

12. Unless otherwise indicated references in this opinion will be to Ruddy rather than D.N. or the Robertson firm, since Ruddy has consistently been the primary agent of both entities in pursuing this fee-collection matter and in prosecuting the underlying claim.

we hold that Ruddy's right to these fees depends on a question of fact which the superior court did not answer, and we remand so that Ruddy's rights can be determined.

■ When Hammond and Ruddy agreed that Ruddy would help represent the Kaatz estate, Alaska law did not require a subrogated workers' compensation carrier to contribute towards the attorney's fees of a successful tort claimant. This meant that the carrier was often able to receive a "free ride" and that the attorneys' share of any recovery would be taken from what remained after the carrier's subrogation rights were satisfied. If the carrier wished to lend legal help to the lawsuit, it could hire its own counsel and pay him or her out of its own recovery. Not long after Ruddy began to represent the Kaatz estate, the carrier hired Ruddy to represent its interests. We need not address in detail the potential conflict of interest this circumstance involved.[13] What is important here is that Ruddy was already legally committed to prosecute the case on behalf of the estate and his acceptance of the carrier's offer may have added very little to that commitment.

The possibility that the carrier might have to bear a pro rata share of the Kaatz estate's attorney's fees was raised when this Court decided *Cooper v. Argonaut Insurance Companies*, 556 P.2d 525 (Alaska 1976). In that case we held that a compensation carrier is required to pay its pro rata share of litigation expenses (including attorney's fees) incurred by an employee in recovering from a third-party tortfeasor. Ruddy's co-counsel explicitly relied upon *Cooper* in altering their original fee arrangement. They deducted one-third of the carrier's $61,800.00 subrogated claim as attorney's fees incurred in prosecuting the Kaatz claim. The carrier thus received $41,200.00 (less a small amount for pro rata expenses) and the $20,600.00

withheld from the carrier was distributed to Ruddy, Rowland, Walters and Hammond in accordance with the inter-attorney arrangements. Ruddy claims that *Cooper* does not apply to cases in which the carrier hires its own counsel and that the carrier should have received its full $61,800.00 lien, part of which would have been paid to him under his own one-third fee agreement with the carrier.

■ In footnote 12 of *Cooper*, we observed that "[n]othing said herein is intended to imply that a sharing of legal costs is required when the employer or compensation carrier seeks recovery against the third-party tort-feasor." The question before us is whether the carrier's act of hiring Ruddy—who was already obligated to represent the Kaatz estate—constitutes the sort of action which renders the *Cooper* cost-sharing rule inapplicable. Before answering this question we note that some states have drawn a distinction between "active" and "passive" representation of an employer or carrier: if the carrier's attorney does no more than monitor the case, the carrier is still required to contribute to the claimant's litigation expenses. *See generally* Larson, The Law of Workmen's Compensation § 74.32(b), at 14–462—14–464 (1983) (citing cases and statutes from Maryland, Minnesota, Nebraska, Texas and Utah). We think this distinction is a sound one. If a compensation carrier's attorney does no more than monitor the activities of the claimant's attorney, the fact that the carrier has chosen to hire its attorney on a contingent-fee basis should not be permitted to obscure the fact that the carrier's attorney has not actually assisted in obtaining a recovery against a third party tort-feasor. *Thomas v. Aetna Casualty and Surety Co.*, 473 F.2d 164, 166, 167 (D.C.Cir. 1972) (Maryland law).

■ Ruddy correctly notes that he was the lead counsel in this case. In no

---

**13.** The statutory lien a workers' compensation carrier possesses may handicap a tort claimant's effort to settle his or her case. If the carrier refuses to reduce the amount owed it under AS 23.30.015(g), its lien may cut deeply into the claimant's own potential recovery and distort opportunities for settlement. Under the circumstances claimant and carrier should not be represented by the same counsel.

sense can his efforts be characterized as "passive." Yet his agreement with Hammond committed him to this effort some months before he accepted the carrier's offer of employment. It is possible that Ruddy's position as counsel for the carrier did not change his approach to this case in any significant way. To decide whether the *Cooper* cost-sharing rule applies to the instant case, we would have to know what Ruddy was able to do on behalf of the carrier that he would not have been able to do had he represented only the Kaatz estate. If Ruddy's independent efforts on the carrier's behalf substantially contributed to the $1,000,000 settlement, he should be able to recover the fees he seeks. *See* Larson, *supra*, § 74.32(b) at 14–462. If, on the other hand, Ruddy's efforts on behalf of the carrier did not substantially contribute to the third party tort recovery, the *Cooper* rule applies, the carrier was obligated to make a pro rata contribution to the Kaatz attorneys' fees, and Ruddy should only recover as one of those attorneys.[14]

The superior court did not assess Ruddy's independent role, if any, as representative of the carrier. Instead, it held that Ruddy had waived his arguments regarding this aspect of the attorney's fees problem. Because "all parties acquiesced in a probate court approved distribution of the award," the superior court concluded, "... it [was] too late to reopen that issue."

■ This finding of waiver is not supported by the record. The court-approved distribution did state that $20,600.00 was to be deducted from the carrier's award pursuant to *Cooper*. It did not indicate to whom this sum was to be allocated. In approving the distribution, Ruddy may well have assumed he would receive the entire $20,600.00, since the settlement stated that

only $317,900.00 was to be divided among the Kaatz attorneys. He had no reason to anticipate that the $20,600.00 would be added to the $317,900.00 sum before the final attorney's-fee distribution was made. Thus, we conclude that the superior court erred in concluding that Ruddy had waived his right to object to disbursement of the carrier-fee award. If, on remand, the superior court determines that Ruddy's independent work for the carrier made a substantial contribution to the carrier's recovery, it should award Ruddy the fees he seeks.

### IV.

We now turn to the question of whether the superior court erred in concluding as a matter of law that Ruddy was not entitled to additional attorney's fees for handling the second appeal. Noting that Ruddy had failed to adduce any factual support for his contention that the original fee agreement covered only work done at trial, the superior court concluded that he was clearly entitled under the original agreement only to one-third of total attorney's fees recovered. The court held as a matter of law that the original contract had not been modified prior to the second appeal.

■ We conclude that the superior court's ruling must be reversed and hold that Ruddy should be granted summary judgment on the question of his entitlement to additional fees by virtue of a modification of the original fee agreement. Drawing all inferences in favor of Rowland, *Riley v. Northern Commercial Co.*, 648 P.2d 961, 965–66 (Alaska 1982), we find the record unequivocally supports Ruddy's contention that a modification was effected when Rowland assured him to "... go

---

**14.** If the superior court does find that Ruddy's independent work for the carrier substantially contributed to the settlement, it should award all attorneys' fees withheld from the carrier to Ruddy, deducting the portion of those fees he has already received in his role as co-counsel for the Kaatz estate. *Cooper's* common fund rationale is no longer applicable when both claimant and carrier actively participate in

third-party tort litigation through separate counsel. There is no "unjust enrichment" to the carrier, cf. *Cooper v. Argonaut Insurance Co.'s*, *supra*, 556 P.2d at 527, when the carrier chooses to hire and depend on the efforts of its own attorney, and we decline to read more into AS 23.30.015(g) than we read into it when we decided *Cooper*. *See Cooper*, *supra*, 556 P.2d at 528 (Rabinowitz, J., dissenting).

ahead and run the appeal, Bill, and we'll settle up on it at the end."

Rowland's own account of his conversation with Ruddy clearly supports our conclusion. In an affidavit, Rowland set out his version of the "agreement":

> ... I told Mr. Ruddy to "keep track of his time and we would work something out" or words to that effect. I had in mind in making this remark that Mr. Ruddy had already prosecuted one appeal, that his efforts on the second appeal would be *pro forma*, that he was not entitled to any compensation for such efforts, and that any additional funds would have to come out of my share and perhaps the other counsels' share. It was my intention at the time, and my remark could not have been otherwise understood, that I retain discretion over my additional payment to Mr. Ruddy, as no such additional payment was required, and I intended that a decision on any voluntary payment be reserved until after completion of the case. I intended only to discuss striking an agreement with him in the future if that were possible and appropriate. At no time did I tell him, nor to my knowledge did Mr. Walters tell him, that he would be paid at his hourly rate for the time he expended. Indeed, his compensation was fixed by the agreement he had reached with Mr. Hammond. Any "frosting on the cake" was to be at our discretion.

Thus, even according to Rowland, Ruddy is entitled to a certain amount of additional compensation for handling the second appeal.

In reaching our decision, we do not overlook the fact that the parties may not have reached an agreement regarding Ruddy's rate of compensation for the second appeal. Although the modification of an existing agreement is governed by the same principles regarding proof and enforceability as the original contract,[15] the absence of a specified rate of pay does not vitiate the validity of the modification. Ruddy is entitled to be compensated for the reasonable value of his services rendered in pursuing the second appeal.[16] Thus, it is necessary to remand the case for a determination of the amount of additional compensation which Ruddy is due.[17]

REVERSED and REMANDED for further proceedings consistent with this opinion.

MATTHEWS, Justice, dissenting in part.

Ruddy contractually obligated himself to the Kaatz estate to assist in the prosecution of the estate's case. In contesting the appellees' motion for summary judgment, Ruddy did not assert as a matter of fact that he had performed additional services as counsel for the carrier in the prosecution of this case. Indeed, there is no suggestion in appellant's brief that any such additional services were performed. Therefore, I do not agree that there is a genuine issue of material fact as to whether such services were performed and disagree with part III of today's opinion which requires a re-

---

15. *See Edwards v. Peavey Company,* 170 Mont. 45, 549 P.2d 1082, 1084–85 (1976); *PLC Landscape Construction v. Piccadilly Fish'N Chips,* 28 Utah 2d 350, 502 P.2d 562, 563 (1972).

16. *See Arizona Board of Regents v. Arizona York Refrigeration Co.,* 115 Ariz. 338, 565 P.2d 518, 521 (1977) (once a contract was formed whereby insurer agreed to performance of additional repairs, it obligated itself to pay for their reasonable value); *Allred v. Lininger,* 156 Colo. 341, 398 P.2d 967, 969 (1965) (in absence of agreed price, it is a general rule that the court is required to determine the price on the basis of reasonable value); *Rutcosky v. Tracy,* 89 Wash.2d 606, 574 P.2d 382, 385 (1978) (en banc) (once the fact of compensation is established, failure to agree upon precise degree of compensation does not vitiate performing party's right to reasonable compensation), *cert. denied,* 439 U.S. 930, 99 S.Ct. 317, 58 L.Ed.2d 323 (1978).

17. In his brief, Ruddy argued that if he was not entitled to additional fees on a theory of contractual modification, he should be permitted to recover the reasonable value of his services on a theory of quantum meruit. However, the claim based on quantum meruit was abandoned at oral argument. Therefore, we do not address it here.

mand in order to explore this question.[1]  In all other respects I agree with the opinion.

---

**1.** Since Ruddy's obligation was to use his best efforts on behalf of his first client, the Kaatz estate, it is difficult to imagine how any of his efforts in the prosecution of the case can be regarded as additional to this duty.