368 So.2d 1153 (1979)
KLEINSCHMIDT, BRASSETTE & ASSOCIATES, INC., and Kleinschmidt & Associates, Inc., Plaintiffs-Appellees,
v.
Ms. Freddie AYRES, Defendant-Appellant.
No. 6860.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1979.
*1154 Peter A. Ciambotti, Lake Charles, for defendant-appellant.
Cox & Cox, James J. Cox, Lake Charles, for plaintiffs-appellees.
Before GUIDRY, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This is a suit brought by the plaintiffs to recover fees under an oral contract for architectural services rendered the defendant in connection with a proposed construction of a residence. The defendant denies any indebtedness to the plaintiffs. From a judgment rendered in favor of Kleinschmidt, Brassette & Associates, Inc., in the amount of $1,483.60 and in favor of Kleinschmidt & Associates, Inc.,[1] in the amount of $3,120.20, defendant appealed.
Two issues are presented for determination:
(1) In Louisiana, does an architect have an affirmative duty to inform and to give his client some idea of the final cost of a project early in their relationship or on an ongoing basis even though the architect and client have not specified and agreed on a cost limitation for building a structure?
(2) In this case did the defendant benefit from the work product of the plaintiffs to support recovery in quantum meruit?
The trial judge favored this court with an excellent written opinion, a portion of which we will quote and with which we agree. Accordingly, we take the liberty of quoting from his reasons:
"The arrangements between Ms. Ayres and Mr. Kleinschmidt for drawing the house plans commenced about the latter part of September, 1976, during a social engagement with friends. While their *1155 first conversation was casual and unbusinesslike, the defendant knew then that she was expected to pay for the architectural services, because she testified she asked Mr. Kleinschmidt if they were going to cost her `hundreds or thousands of dollars' or words to that effect. Unfortunately, Mr. Kleinschmidt simply told her not to worry about this. Although he testified that later he showed Ms. Ayres his firm's rate schedule and told her she was to be charged on an hourly basis (except for his own time), the court concludes the proof falls short of establishing that there was a meeting of the minds of these two parties as to just how much the architectural fee was going to be or exactly how it was to be computed.
"Nor does the evidence reflect that either party mentioned the anticipated cost of constructing the house at any time before the plans were completed. Ms. Ayres simply told Mr. Kleinschmidt and his staff what she wanted and they draw the plans therefor, with some suggestions and differences which they thought were advisable from an architectural standpoint. Some of the latter were unacceptable to Ms. Ayres. Also, at times she requested other things that she wanted in the house. The plans were changed accordingly.
"Ms. Ayres said she expected the plans to be completed by the end of 1976, but they were not presented to her in final form until March, 1977. There is a dispute between the parties as to just which of them was responsible for the delay and also whether or not it was unreasonable. The record does not reflect that the defendant expressed any great dissatisfaction to plaintiffs or took any positive action in this regard.
"In any event, Ms. Ayres was satisfied with the completed plans, at least until she received her first construction bid of $145,000.00. Later Mr. Kleinschmidt got a bid from another contractor for $125,000.00 or $129,000.00. Shortly thereafter, Ms. Ayres went on a vacation and lost interest in the project. She testified at the trial that she did not know if she is going to have the house built.
"There was testimony by a witness experienced in construction work that the plans lacked some specification details. However, a contractor who testified on behalf of the defendant felt the plans were sufficient to obtain bids. The court concludes that the plans were complete from an architectural standpoint."
The record fully supports these findings of fact by the trial court; thus no manifest error exists in this regard.
The defendant contends that plaintiffs cannot recover any fees as they failed to advise their client of the final cost of construction. The law in this regard is as follows:
An architect employed to prepare plans and specifications for a building, with the understanding that the construction would be accomplished within certain cost limitations, cannot recover compensation for his services when the building cannot be erected except at a cost materially in excess of the amount specified. MacDonnell v. Dreyfous, 144 La. 891, 81 So. 383 (1919); Tsoi v. Ebenezer Baptist Church, 153 So.2d 592 (La.App. 4th Cir. 1963); Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367 (1953).
On the other hand, where an architect is employed to prepare plans and specifications for a building and there are no cost limitations agreed upon, such architect can recover compensation for his services irrespective of the costs of construction. Moossy v. Huckabay Hospital, Inc., 283 So.2d 699 (1973).[2] Further, if no cost limitations are agreed upon, the architect has no obligation to inquire into or to keep *1156 himself informed of his client's financial status. 6 C.J.S. Sec. 28, Architects, p. 494; Guirey, Srnka & Arnold, Architects v. City of Phoenix, 9 Ariz.App. 70, 449 P.2d 306 (1969); Texas Delta Upsilon Foundation v. Fehr, 307 S.W.2d 124 (1957).
The record fully supports the trial court's finding that "no such cost limitation was ever discussed or understood by the parties." Ms. Ayres' testimony in this regard is as follows:
"Q. Ms. Ayres, in fact, you didn't really discuss money at all about this project during the whole course of the project, did you?
"A. We did not.
"Q. You were not really concerned about the cost per square foot, and didn't ask him how much it would cost per square foot, did you?
"A. No."
Under the above authorities and the facts of this case, the plaintiffs were under no duty to inform defendant of the costs of construction. The failure to so inform defendant would not be a bar to recovery of the architectural fee.
The defendant further contends that the plans did not benefit the defendant, thus recovery cannot be allowed.
The trial judge in his reasons for judgment concluded that there was no meeting of the minds of the parties as to how much the architectural fee was going to be or exactly how it was to be computed. In view of this, recovery was allowed on the basis of quantum meruit.[3]
The trial court correctly resolved the contention of the defendant as follows:
"The defendant's contention that she has not received any benefit from the house plans is not well taken. She accepted the final plans and they were submitted to two contractors, who bid on the construction of the home. Although Ms. Ayres said that both bids greatly exceeded the amount which she expected to spend, apparently such figures were not prohibitive and beyond all consideration because she indicated at the trial that she may still build the home at some time in the future."
We find no manifest error in this conclusion.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Kleinschmidt & Associates, Inc. became the successor of Kleinschmidt, Brassette & Associates, Inc. during the time the house plans were being prepared.
[2] In Moossy the contract for architectural services contained no cost limitation. The fee of the architect was based upon a percentage of the estimated project cost. The architect estimated the cost at $499,210. The lowest bid was $821,018. The Supreme Court, after observing that no cost limitation was contained in the architectural employment contract, allowed recovery by the architect for his services, awarding the contract percentage (7% of 75%) of the estimated cost of $499,210.00.
[3] The computation of the hourly charges is not contested.