DOMENGEAUX, Judge.
This case involves a dispute over the amount owed under a verbal contract. Plaintiff, Ralph L. Primeaux, a licensed architect, sued defendant, Dr. Alfred E. Harmon, to recover the amount of $5,330.00. allegedly due for architectural services rendered by plaintiff. In his answer, defendant admitted engaging the services of plaintiff for architectural work, and that plaintiff was entitled to a fee, but he denied that he owed the amount claimed by plaintiff.
About ten days before trial defendant filed an “amended answer” which was really a reconventional demand, in which he alleged that the amount sought by plaintiff should be reduced by $2,458.78, the amount it would take to remove a stairway built from allegedly defective plans submitted by Mr. Primeaux, which defect rendered the stairway unusable. Since defendant’s re-conventional demand was not filed until after the answer was filed, leave of court was required under La.C.C.P. Article 1033. Leave of court was never obtained prior to trial, so the matter was taken up when the trial proceedings commenced. The judge did not allow the reconventional demand to be filed as worded because he did not think plaintiff was ready to go to trial on the reconventional demand, especially since defendant’s allegation of “improper design” indicated that defendant contemplated a malpractice suit against plaintiff. The court also commented that defendant should file his reconventional demand at a later date so that the original suit could be tried without further delay. Then, after an in-chambers conference, defense counsel orally amended his reconventional demand to reflect that no malpractice claim was being made. Defense counsel further stated:
“Strictly, the claim that is being made is for a reduction in the amount of the claim being made by the plaintiff; strictly that. No other claims are being made or intended...”
Thus, the only issues to be decided involved the accuracy of plaintiff’s calculation of the number of hours spent on Doctor Harmon’s renovation project and the reasonableness of charging $40.00/hr. for said services. The court felt that defendant’s amended reconventional demand merely contested the number of hours spent and the method of calculating a fee based on the work done. It later developed, however, that defendant was asking for a reduction in the amount claimed by plaintiff because of an allegedly defective stairway design.
After a trial on the merits, the trial judge awarded plaintiff the amount prayed for, and rejected Doctor Harmon’s request for a reduction. The trial court held that plaintiff proved he expended 150 hours working on Doctor Harmon’s renovation project and that the $40.00 per hour that he charged for such work was a reasonable architect’s fee for renovation type work.
Once plaintiff proved his case, it became incumbent upon defendant to prove that plaintiff’s claim was excessive or that the services rendered were unreasonable or unnecessary. The trial court decided defendant did not discharge his burden of proof. The court also found that the plaintiff’s design was not defective, so he rejected defendant’s demand for a reduction in the price owed. For the reasons below, we affirm.
The evidence shows that in late 1978, Doctor Harmon decided to renovate the second floor and attic of his home in Crowley, Louisiana. In October or November of that year he initially contacted Mr. Pri-meaux to ask him to do the architectural work necessary to accomplish the renovation. Doctor Harmon intended to do the contract work himself. Mr. Primeaux agreed to do the architectural work but did not begin until February of 1979. It is undisputed that the parties never discussed the cost of Mr. Primeaux’s services prior to Doctor Harmon’s receipt of plaintiff’s bill.
*1095 On October 2, 1979, plaintiff presented defendant with a bill for $5,330.00. The bill reflected a charge of $6,000.00 ($40.00 per hour for 150 hours), less $750.00 (a $5.00 per hour discount), plus a bill for $80.00 from a firm of consulting engineers, leaving a total of $5,330.00.[1] After receiving this bill, which he though was inordinately excessive, defendant terminated the business relationship that existed between the plaintiff and himself, explaining to the plaintiff that he could no longer afford the architect’s services. Plaintiff thereafter demanded payment of the bill tendered to defendant on October 2nd, which defendant refused to pay. Subsequently this suit was brought.
We think the testimony of plaintiff, his expert witness Mr. Charles Hugh Crane, and the calendar exhibits of the plaintiff adequately support a finding that plaintiff expended 150 hours on the project. Plaintiff’s-calendar records show that between February and September of 1979 he spent about 150 hours on Doctor Harmon’s renovation project. This included time spent traveling, consulting, making on-site measurements, and preparing drawings. Extensive cross-examination of Mr. Primeaux concerning his calendar entries failed to establish that Mr. Primeaux spent his time unnecessarily or that he charged Doctor Harmon for more hours than he actually spent on the project. Also, both Mr. Crane and defendant’s expert witness, Mr. Frank J. Vicari, an architect from Baton Rouge, testified that renovations are considerably more difficult and time consuming for an architect than are completely new projects. Mr. Crane felt the hours claimed by Mr. Primeaux were commensurate with the type of work being done.
There was also ample evidence, as shown by the testimony of Mr. Primeaux and both of the expert witness architects that $40.00 an hour for renovation type work was an acceptable architect’s fee. Thus, even though the parties did not agree on a particular fee or a particular method of calculating the fee, the amount prayed for, based on an hourly rate, represents a reasonable fee for the amount of work done. Kleinschmidt, Brassette & Associates v. Ayres, 368 So.2d 1153 (La.App. 3rd Cir. 1979).
. Some testimony by Mr. Vicari indicated that Mr. Primeaux’s bill was excessive because his drawings were incomplete and not usable by Doctor Harmon or any contractor. The court chose to discount his testimony in favor of testimony by plaintiff and Mr. Crane that the hours spent and work done by Mr. Primeaux, to the date his services were terminated, were reasonable. The court did not manifestly err in minimizing Mr. Vicari’s testimony. Mr. Primeaux’s bill was for work done to that date. No evidence shows that Mr. Primeaux felt his part of the job was finished or that his plans were thought to be final when he submitted his bill. Indeed, the final architect’s fee was expected to be much higher as the difficult renovation project neared completion.
We do not necessarily agree with the trial court’s finding that the stairway design was not defective, but for the reasons below we affirm the court’s judgment rejecting defendant’s demand for a reduction of the amount claimed by plaintiff.
The testimony and exhibits establish that the architectural drawing of the stairway from the second floor to the attic reflected a head clearance of 83 inches from the center of a landing on the stairwell to a valley rafter supporting .the roof. Mr. Pri-meaux testified he calculated this measurement himself. Mr. Vicari testified that he measured Doctor Harmon’s construction of the stairway against the measurements called for in the drawing and found a variance of only xh inch. However, he found that the head clearance from the stairway landing to the valley rafter varied from a low of 53 inches on one side of the 43 inch wide stairway to a high of 87 inches on the other side. Doctor Harmon measured the *1096 clearance from the center of the landing to the rafter. Instead of being 83 inches, as the plans indicated it would be, the clearance was only 72 inches. Photographs vividly corroborated this measurement. Doctor Harmon, standing at 6'2" tall, could negotiate that portion of the stairwell beneath the valley rafter only by walking on the part with the most clearance and then only by stooping. This was most inconvenient for Doctor Harmon because the attic was going to be transformed into the master bedroom, making him a frequent user of the stairway.
The miscalculation in the amount of head clearance was discovered after Doctor Harmon had done a substantial amount of work on the stairway, including cutting a hole in the second floor ceiling. After learning of the error, Mr. Primeaux advised Doctor Harmon that he (defendant) could remedy the low clearance situation by lowering the landing by fractions of inches, or by modifying the valley by stiffening it, or by replacing part of the rafter with a steel sandwich “U” channel member. Mr. Vicari also testified that the problem could be remedied by lowering the landing. Doctor Harmon did not want to replace that part of the rafter over the stairwell with a steel “U” channel member because he though it would be too costly and would involve structural problems. He did not say why he did not agree to lower the landing.
We recognize that Doctor Harmon has encountered serious problems by using Mr. Primeaux’s stairway design. Yet, even if we assume that the dimensioning error is attributable to Mr. Primeaux, and that Mr. Primeaux failed to warn Doctor Harmon of this miscalculation prior to the construction of the stairway, we must reluctantly conclude that defendant is not entitled to a reduction of the fees on that basis. Defendant emphasized during the trial that he was not asking for a reduction because the stairway design was defective. Instead, defendant asked for a reduction by the amount it would cost to remove the stairway and fix the hole in the ceiling, or in other words, to restore the second floor room where the stairway was located to the condition it was in before renovation had begun.
Mr. Ivey Richard, an estimator for Central Lumber Company, testified it would cost $2,458.78 to restore the room. However, defendant did not testify he intended to remove the stairway from its present location, and neither of the experts testified removal was necessary. Indeed, Mr. Primeaux and Mr. Vicari both mentioned the lowering of the landing as a means of obtaining more head clearance, and nothing in the record establishes that the stairs must be removed in order to lower the landing. At the same time, no evidence in the record establishes the approximate cost of lowering the landing or of inserting a steel sandwich “U” channel member in the place of that part of the valley rafter that intrudes upon the head space above the stairwell. Since the record contains no evidence establishing the cost of remedying the defect, we must conclude that defendant simply did not prove his entitlement to a reduction of the fee.
For the above and foregoing reasons, the judgment of the district court is affirmed. All costs are assessed against defendant, Doctor Alfred Harmon.

AFFIRMED.

. Plaintiff explained that he gave defendant a $5.00 per hour discount because he considered Doctor Harmon to be part of the family.